**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP - 9 2005
DROP BOX

CLERK, U.S. DISTRICT COURT

Deputy

| | |
|---|---|
| In re: | § |
| | § Chapter 11 Case |
| MIRANT CORPORATION, *et al.*, | § Case No. 03-46590 (DML) |
| | § Jointly Administered |
| Debtors. | § |
| | § |
| ———————————————— | § |
| | § |
| MIRANT CORPORATION, *et al.*, and | § |
| THE OFFICIAL COMMITTEE OF | § |
| UNSECURED CREDITORS OF MIRANT | § |
| CORPORATION, *etc.*, | § |
| | § |
| Plaintiffs, | § Civil Action No. 4:05-CV-479-A |
| | § |
| v. | § |
| | § |
| THE SOUTHERN COMPANY, | § |
| | § |
| Defendant. | § |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF
THE SOUTHERN COMPANY FOR WITHDRAWAL OF REFERENCE**

DAL:577049.1

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. THE REFERENCE SHOULD NOT BE WITHDRAWN ....................................... 2

    A.    This Matter is a Core Proceeding ............................................................. 3

    B.    Southern Has No Right to a Jury Trial ..................................................... 7

          1.    Count I – Fraudulent Conveyances, Fraudulent Transfers and/or Illegal Dividends ................................................................. 9

          2.    Counts II and VI – Recharacterization and Equitable Subordination ...................................................................... 12

          3.    Count III – Alter Ego ............................................................. 13

          4.    Count IV – Inducing/Aiding and Abetting Breach of Fiduciary Duty ...................................................................................... 14

          5.    Count V – Objections to Defendant's Claims and Submission to Jurisdiction ....................................................................... 15

    C.    Judicial Economy Would Not Be Fostered by Withdrawal ................................. 17

    D.    Southern is Engaging in Forum Shopping .......................................... 19

    E.    Other Factors Do Not Give Rise to Cause .......................................... 20

III. NEITHER A CHANGE OF VENUE NOR CONSOLIDATION WITH THE DISMISSED D&O ACTION ARE APPROPRIATE .................................... 21

    A.    Venue is Appropriate in This Court ..................................................... 21

    B.    There is no Basis for Consolidation of this Case with the Dismissed D&O Action .......................................................................... 25

IV. CONCLUSION ............................................................................................. 25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.R.E. Mfg. Co., Inc. v D&M Nameplate, Inc. (In re A.R.E. Manufacturing Co., Inc.)*, 124 B.R. 912 (Bankr. M.D. Fla. 1991)..............................................22

*Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703 (1974)..........................................................................................................13

*Big Rivers Elec. Corp. v. Green River Coal Co., Inc.*, 182 B.R. 751 (W.D. Ky. 1995) .............................................................................................2, 18

*Brown v. Shepherd (In re Lorax Corp.)*, 307 B.R. 560 (Bankr. N.D. Tex. 2004).............19

*Bunch v. J.M. Cap. Fin., Ltd. (In re Hoffinger Indus., Inc.)*, No. 201BK20514, 2005 WL 1634542 (Bankr. E.D. Ark. July 12, 2005) ...................12

*Colvard v. Gulf States Drilling Co., Inc. (In re Bar M Petroleum Co., Inc.)*, 63 B.R. 343 (Bankr. W.D. Tex. 1986)................................................................4

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ...............................................22

*Centre Strategic Inv. Holdings, Ltd. v. Official Comm. of Unsecured Creditors of SLP, LLC (In re Senior Living Properties, LLC)*, 294 B.R. 698 (Bankr. N.D. Tex. 2003).....................................................................................................6, 14

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558 (1990) ......13, 14

*Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 569 F.2d 1239 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045 (1980) .........................................................................22

*Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.)*, 133 B.R. 585 (Bankr. D. Del. 1991) ..............................................................................21, 22

*In re Crown Vantage, Inc.*, No. C 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. Dec. 16, 2002) ...................................................................................11, 12

*Curtis v. Loether*, 415 U.S. 189 (1974)................................................................10, 12, 13

*Damage Recovery Sys. Inc. v. Tucker*, No. Civ. 02-1647-SLR, 2005 WL 388597 (D. Del. Feb. 2, 2005) ...................................................................................15

*Denton Co. Elec. Coop., Inc. v. Eldorado Ranch, Ltd. (In re Denton Co. Elec. Coop., Inc.)*, Case No. 02-40665-DML-11, 2003 WL 22846354 (Bankr. N.D. Tex. April 8, 2003)................................................................................16

*FMC Finance Corp. v. Murphree*, 632 F.2d 413 (5th Cir. 1980)......................................13

*Feliciano v. Texaco, Inc.*, 144 F. Supp. 2d 741 (S.D. Tex. 2001) ....................................22

*Feltner v. Columbia Pictures TV*, 523 U.S. 340 (1998) .......................................................7

*Foxmeyer Health Corp. v. McKesson Corp. (In re Foxmeyer Corp.)*, 217 B.R. 511 (Bankr. N.D. Tex. 1997) ...........................................................................21, 22

*Germain v. Conn. Nat'l Bank*, 988 F.2d 1323 (2d Cir. 1993) ................................8, 11, 17

*Granfinanciera v. Nordberg*, 492 U.S. 33 (1989)............................................7, 8, 9, 10, 16

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).................10, 13, 15

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985).....................................................................................................3

*In re Hooker Invs.*, 122 B.R. 659 (S.D.N.Y. 1991) ...........................................................16

*In re Jensen*, 946 F.2d 369 (5th Cir. 1991)........................................................7, 10, 14 15

*Katchen v. Landy*, 382 U.S. 323 (1966)...........................................................................9, 10

*Langenkamp v. Culp*, 498 U.S. 42 (1990).................................................................8, 10, 11

*Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720 (S.D. Tex. 2002)...................................22

*Lombard-Wall Inc. v. NYC Housing Dev. Corp. (In re Lombard-Wall Inc.)*, 48 B.R. 986 (S.D.N.Y. 1985)...............................................................................................4

*M & E Contractors, Inc. v. Kugler-Morris Gen. Contractors, Inc.*, 67 B.R. 260 (N.D. Tex. 1986)...........................................................................................................3

*Merchants Bank v. C.R. Davidson Co. Inc. (In re CRD Sales & Leasing, Inc.)*, 231 B.R. 214 (Bankr. D. Vt. 1999) .............................................................................7

*McGinnis v. Ely Lilly & Co.*, 181 F. Supp. 2d 684 (S.D. Tex. 2001) ...............................22

*Minka Lighting v. Trans Globe Imps.*, No. 02-CV-2538-G, 2003 U.S. Dist. LEXIS 8862, 2003 WL 21251684 (N.D. Tex. May 23, 2003)....................................22

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) .........................11

*Ne. Graphic Supply, Inc. v. Net 2 Press, Inc. (In re Ne. Graphic Supply, Inc.)*, Case No. 03-20069, 2003 Bankr. LEXIS 1585, 2003 WL 22848944 (Bankr. D. Me. Dec. 2, 2003)...............................................................................................9, 16

*Nu Van Tech., Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*, No. 01-49589-DML-11, 2003 WL 23785355 (Bankr. N.D. Tex. Oct. 14, 2003)...........................2, 16

*Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095 (2d Cir. 1993)..........18, 19

*Pereira v. Farace*, No. 03-5053, 2005 U.S. App LEXIS 13040 (2d Cir. June 30, 2005) ................................................................................................10

*Pinter v. Dahl*, 486 U.S. 622 (1988) ...............................................................................15

*In re Rickel & Assoc.*, 320 B.R. 513 (S.D.N.Y. 2005)..............................................8, 15, 17

*Roberds, Inc v. Palliser Furniture*, 291 B.R. 102 (S.D. Ohio 2003) ...............................17

*Schoenthal v. Irving Trust Co.*, 287 U.S. 92 (1932) .......................................................10

*Seaway Painting, Inc. v. Cornell & Co., Inc.*, No. 98-158, 1998 WL 800343 (E.D. Pa. Nov. 16, 1998).......................................................................................20

*In re Serv. Marine Industrial*, No. Civ. A. 00-579, 2000 WL 777912 (E.D. La. May 30, 2000) ................................................................................18, 20

*SNA Nut Co. v. Haagen-Dazs Co.*, 302 F.3d 725 (7th Cir. 2002) ....................................16

*Sibarium v. NCNB Nat'l Bank*, 107 B.R. 108 (N.D. Tex. 1989) ...................................3, 20

*Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822 (S.D.N.Y. 2002)...........................................................4

*Stuhley v. Dunoco Dev. Corp. (In re Dunoco Dev. Corp.)*, 56 B.R. 137 (Bankr. C.D. Cal. 1985) ...................................................................................................9

*Tenn. Valley Steel Corp. v. B.T. Commercial Corp.*, 186 B.R. 919 (Bankr. E.D. Tenn. 1995)...................................................................................12, 13

*Travelers Indem. Co. of Am. v. Nat'l Union Fire Ins. Co. of Phila.*, Case No. 3:02-CV-0585, 2002 WL 1575409 (N.D. Tex. July 16, 2002)...................................22

*Tull v. United States*, 481 U.S. 412 (1987) ...............................................................8, 9, 13

*United States v. Golden Acres, Inc.*, 684 F. Supp. 96 (D. Del. 1988)................................13

*United States v. Miller,* No. Civ.A.5:02-CV-0168-C, 2003 WL 23109906
(N.D. Tex. Dec. 22, 2003) ......................................................................................2, 3

*United States v. Oncology Assocs., P.C.,* No. Civ H-95-2241, 2000 WL 1074304
(D. Md. July 24, 2000)........................................................................................18, 20

## FEDERAL STATUTES

11 U.S.C. § 105(a) ........................................................................................................3, 12

11 U.S.C. § 502(a) .............................................................................................................3

11 U.S.C. § 502(d) ...........................................................................................................11

11 U.S.C. § 510(c) .............................................................................................................3

11 U.S.C. § 544..................................................................................................................3

28 U.S.C. § 1412..............................................................................................................22

28 U.S.C. § 157(d) .............................................................................................................2

Mirant Corporation, *et al.*, (the "Debtors") and The Official Committee of Unsecured Creditors of Mirant Corporation (the "Committee", together with the Debtors, "Plaintiffs"), for their Objection to Motion (the "Motion") of The Southern Company ("Southern") for Withdrawal of the Reference of this adversary proceeding, respectfully represent as follows:

## I.
## INTRODUCTION

Southern and three of the defendants in Adversary No. 05-4146 (the "D&O Action") have brought a coordinated joint defense/attack on the Plaintiffs, with the first sortie being comprised of dual motions to withdraw the reference.[1] Aside from the fact that on August 9, 2005, the Committee filed a motion to dismiss the D&O Action as a matter of right, thus obviating any need to consider consolidation or any related issues, the Motion lacks merit.

This matter is a core proceeding, and try as it might, Southern cannot recast this case as anything other than a proceeding that directly and unquestionably affects the Debtors' restructuring and the debtor-creditor relationship, and for which there is no right to trial by jury. Each of the causes of action asserted against Southern in the Amended Complaint are core because they are inextricably intertwined with the same transaction that forms the basis of Southern's proofs of claim[2] and the Plaintiffs' objections thereto – namely, Southern's initial public offering and subsequent spin-off of Mirant – and directly impact the claims allowance

---

[1] These three defendants are Elmer B. Harris, H. Allen Franklin, and W.L. Westbrook, former Southern directors and/or officers (collectively, the "Directors").

[2] Shortly after the Debtors commenced their chapter 11 cases, Southern filed proofs of claim based upon agreements (the "Separation Agreements") and guaranties (the "Guaranties") executed in connection with the separation of Mirant from Southern. The Debtors filed objections to each of Southern's proofs of claim which are pending before this Court. Pursuant to consensual scheduling orders with Southern entered by the Court (the "Scheduling Orders"), *see* Appendix Tabs A-1 through A-3, each of the parties agreed to defer the Debtors' assertion of counterclaims relating to the transfers to Southern, including those arising under section 502(d) of the Bankruptcy Code, and other chapter 5 causes of action, until the filing of the original Complaint, as well as any acts or omissions by Southern in respect of such transfers. As discussed below, the Plaintiffs' Amended Complaint now asserts such deferred counterclaims.

process. If the Plaintiffs are successful – be it the Committee and the Debtors, or any successor(s) thereto under a confirmed plan – then Southern will be required to return almost $2 billion to the Debtors' estates for distribution to creditors. It is difficult to envision an action more central to an estate's administration than this one.

Further, aside from the fact that the Amended Complaint objects to Southern's claims, all causes of action in the Amended Complaint either sound in equity, seek an equitable remedy, or affect the claims allowance process and the priority of creditors' claims. As a consequence, no jury trial attaches. The Motion should be denied.

## II.
## THE REFERENCE SHOULD NOT BE WITHDRAWN

Southern seeks permissive withdrawal of the reference pursuant to the first sentence of 28 U.S.C. § 157(d), which requires a showing of cause.[3] *United States v. Miller*, No. Civ.A.5:02-CV-0168-C, 2003 WL 23109906, at *4 (N.D. Tex. Dec. 22, 2003). "Defendant, as the moving party, bears the burden of showing sufficient cause justifying discretionary withdrawal of the reference." *Nu Van Tech., Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*, No. 01-49589-DML-11, 2003 WL 23785355, at *2 (Bankr. N.D. Tex. Oct. 14, 2003).

The Bankruptcy Code does not define the term "cause." *Big Rivers Elec. Corp. v. Green River Coal Co., Inc.*, 182 B.R. 751, 754 (W.D. Ky. 1995). In the Fifth Circuit, courts evaluating whether "cause" exists sufficient to support a withdrawal of the reference review the following factors: "(1) whether or not the proceedings [are] 'core' proceedings; (2) the effect of the withdrawal on judicial efficiency; (3) uniformity in bankruptcy administration; (4) reduction in

---

[3] The first sentence of section 157(d) provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." The second sentence of section 157(d), which provides for mandatory withdrawal of the reference under certain circumstances, does not apply in this proceeding and, in any event, Southern has not argued that withdrawal is mandatory.

forum shopping; (5) fostering the economical use of the debtor's and creditor's resources; (6) expediting of the bankruptcy process; and (7) whether or not there is a jury demand." *Miller*, 2003 WL 23109906, at *4 (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985)).

The Fifth Circuit has also stated that when "bankruptcy issues predominate and the [Bankruptcy] Code's objectives will potentially be impaired, bankruptcy courts should generally exercise jurisdiction." *Miller*, 2003 WL 23109906, at *4 (citations omitted). This entails a review of the main objectives of the Bankruptcy Code, which "include, but are not limited to, ensuring the efficient administration and equitable distribution of the estate for the benefit of the creditors and protecting the debtor's right to a fresh start." *Id.* The Fifth Circuit has cautioned "against the indiscriminate filing and granting of motions to withdraw the reference." *M & E Contractors, Inc. v. Kugler-Morris Gen. Contractors, Inc.*, 67 B.R. 260, 268 (N.D. Tex. 1986) (citing *Holland Am. Ins.*, 777 F.2d at 998-99). Accordingly, a district court's "decision to hear a case . . . must be based on a sound, articulated foundation." *Holland Am. Ins.*, 777 F.2d at 998. Given that this matter is a core proceeding and that Southern has no right to a jury trial, no "sound foundation" for withdrawal can be articulated.

## A.     This Matter is a Core Proceeding

It cannot be disputed that core matters predominate the Amended Complaint.[4] *See Sibarium v. NCNB Nat'l Bank*, 107 B.R. 108, 115 (N.D. Tex. 1989) ("[C]ourts may determine that the entire proceeding is core if the core aspect heavily predominates and the non-core aspect

---

[4] Southern does not dispute that Count I for avoidance of fraudulent conveyances and Counts II, V and VI are core proceedings. Nor could it, because these causes of action arise from and directly implicate specific provisions and rights afforded by the Bankruptcy Code. *See* Am. Complaint at Count I (based in part on 11 U.S.C. § 544); Count II (based on 11 U.S.C. § 105(a)); Count V (based on 11 U.S.C. § 502(a)) and Count VI (based on 11 U.S.C. § 510(c)).

is insignificant.").[5]   To that end, it cannot be reasonably disputed that the *entire* Amended Complaint is a core proceeding because all claims raised therein are counterclaims to Southern's proofs of claim.

Southern's Motion focuses on only two causes of action, alter ego and inducing breach of fiduciary duty, as well as the portion of Count I that seeks avoidance of illegal dividends, to argue that withdrawal of the reference is appropriate because these are non-core proceedings. However, Southern's argument misses the mark.   Causes of action characterized as non-core proceedings will be considered core if "(i) the non-core claim arises out of the same transaction as the creditor's proof of claim or (ii) the adjudication of the non-core claim would require consideration of issues raised by the proofs of claim such that the two claims are logically connected."   *See Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 831-32 (S.D.N.Y. 2002) (holding that where creditor filed proof of claim, subsequent adversary proceeding containing core and non-core claims was a core proceeding because the non-core causes of action could impact the claims allowance process and constituted counterclaims to the creditor's proofs of claim as they were logically connected to creditor's claim); *see also Colvard v. Gulf States Drilling Co., Inc. (In re Bar M Petroleum Co., Inc.)*, 63 B.R. 343, 347 (Bankr. W.D. Tex. 1986) (holding non-core cause of action for breach of contract in adversary complaint could be considered a counterclaim to creditor's proof of claim, thereby converting count for breach of contract into a core proceeding, because it arose out of same transaction as creditor's claim); *Lombard-Wall Inc. v. NYC Housing Dev. Corp. (In re Lombard-Wall Inc.)*, 48 B.R. 986, 991 (S.D.N.Y. 1985) (stating that complaint containing non-

---

[5] Here, the differences between the core and allegedly non-core causes of action are insignificant because the allegedly non-core causes of action are based on the same facts and seek essentially the same relief as the core causes of action.

core claims was counterclaim to creditor's proof of claim and a core proceeding, because the causes of action had "some connection" to the creditor's claims).

Here, all of the causes of action asserted in the Amended Complaint directly impact the claims allowance process because they are connected with Mirant's separation from Southern, which forms the basis of Southern's proofs of claim and Plaintiffs' objections thereto.[6]  The *common thread* running through all of the causes of action in the Amended Complaint and Southern's proofs of claim is the separation of the companies and the financial condition of the Debtors at the time of the transfers.

Counts I and II allege that the transfers made in preparation of the companies' separation are fraudulent conveyances.  *See* Amended Complaint at ¶¶ 84-94.  Count V in turn objects to Southern's proofs of claim based upon the fraudulent and illegal transfers alleged in the Amended Complaint.  *Id.* at ¶¶ 108-113.  Count I also alleges that certain obligations incurred and transfers made as a result of the Separation Agreements[7] are fraudulent conveyances.  *Id.* at ¶ 85.  Given that many of Southern's proofs of claim rely in their entirety on the Separation Agreements, it cannot be reasonably disputed that Plaintiffs' fraudulent conveyance action is a counterclaim to Southern's proofs of claim.  Southern even agreed that the Debtors could defer bringing these claims as setoffs or counterclaims until after the deadline to file objections and non-transfer-related counterclaims to Southern's proofs of claim.  *See* Appendix Tab A-1 at ¶ 5

---

[6] Notably, Southern concedes that its proofs of claim are based on the separation of the companies, Motion pg. 17 n.12, and the Amended Complaint is based on various transfers that Mirant made to Southern to effectuate the separation.  As alleged in the Amended Complaint, Southern made the decision in 1997 to separate the two companies and took several steps over the following years to effectuate the separation, including requiring Mirant to make dividends to Southern, repaying equity infusions, and issuing and redeeming a highly valuable share of preferred stock.

[7] The Separation Agreements are comprised of the following: (i) a Master Separation and Distribution Agreement; (ii) a Transitional Services Agreement; (iii) an Indemnification and Insurance Matters Agreement; (iv) a Technology and Intellectual Property Ownership and License Agreement; (v) a Confidential Disclosure Agreement; (vi) an Employee Matters Agreement; (vii) a Tax Indemnification Agreement; and (viii) a Registration Rights Agreement.

("Debtors' Objections to Southern's Claims, as amended . . . including the assertion by Debtors of any affirmative defenses, setoffs or counterclaims (*other than* those setoffs or counterclaims that may *arise in respect of transfers by the Debtors to Southern*, including but not limited to, actions under sections 502(d), 544, 547, 548, 550 and 551 of the Bankruptcy Code, *or acts or omissions that occurred or arose prior to the commencement of these chapter 11 cases* . . . must be filed on or before December 15, 2004") (emphasis added).

Even the allegedly non-core causes of action (the portion of Count I based on illegal dividends, Count III for alter ego and Count IV for inducing breach of fiduciary duty) constitute counterclaims to Southern's proofs of claim because they are based on the same transfers as those set forth in Counts I and II, and form the basis for the claims objections. *See e.g., Centre Strategic Inv. Holdings, Ltd. v. Official Comm. of Unsecured Creditors of SLP, LLC (In re Senior Living Props., LLC),* 294 B.R. 698 (Bankr. N.D. Tex. 2003) (holding that plaintiff's alter ego claim was actually a core proceeding, as a counterclaim to the defendant/creditor's proof of claim, because if successful, the defendant's claim would be disallowed or offset, leaving the defendant obligated to pay the remaining claims against the estate). The portion of Count I based on illegal dividends asserts that the transfers made in contemplation of the companies' separation are illegal dividends.[8]  Count IV alleges that Southern induced Mirant to breach its fiduciary duty to creditors by requiring Mirant to make these transfers at a time when Mirant was insolvent or in the zone of insolvency. Count III similarly alleges that Southern's actions in requiring Mirant to make those transfers demonstrate that the companies were a single entity and that Southern adversely dominated Mirant such that Mirant was the alter ego of Southern. In

---

[8] Moreover, the illegal dividend claim shares a common element with the fraudulent conveyance claim, namely solvency, and, thus, is inextricably intertwined with this undisputedly core claim and the Debtors' objections to Southern's proofs of claim.

other words, the same facts necessary to adjudicate the fraudulent conveyance claims and the objections to Southern's proofs of claim – which are undisputedly core proceedings – will be necessary to adjudicate the illegal dividend, alter ego and inducing breach of fiduciary duty claims.

To argue (as Southern does) that the same set of facts give rise to core jurisdiction when labeled as a fraudulent conveyance or objection to claim, but not when labeled as an illegal dividend or inducing breach of fiduciary duty, impermissibly places form over substance. *All* of the causes of action set forth in the Amended Complaint, even those alleged to be non-core proceedings, constitute counterclaims to Southern's proofs of claim because they are inextricably intertwined with and logically related to the same transaction – namely, the separation of Mirant and Southern. The alleged non-core causes of action are also core proceedings because the conduct alleged therein form the basis, in part, for the Plaintiffs' equitable subordination claim in Count VI. *See Merchants Bank v. C.R. Davidson Co., Inc. (In re CRD Sales & Leasing, Inc.)*, 231 B.R. 214, 219-20 (Bankr. D. Vt. 1999) (holding that when a non-core claim was inextricably intertwined with an equitable subordination claim, the entire proceeding was core).

## B.    Southern Has No Right to a Jury Trial

Southern's Motion is premised almost entirely on the flawed assumption that it has a right to trial by jury. In truth, Southern has no right to trial by jury on any of the Counts in the Amended Complaint. A party is not entitled to a jury trial if the cause of action at issue is equitable and seeks equitable relief. *Feltner v. Columbia Pictures TV*, 523 U.S. 340, 347-48 (1998); *Granfinanciera v. Nordberg*, 492 U.S. 33, 42 (1989); *see also In re Jensen*, 946 F.2d 369, 371 (5th Cir. 1991). Even if the cause of action is legal or seeks legal relief, a party still has no right to trial by jury if, as Southern's own authority recognizes, a party has filed proofs of

claim and the causes of action at issue are based upon public rights that impact the claims

allowance process or the priority of creditors' claims.   *See Germain v. Conn. Nat'l Bank*, 988

F.2d 1323, 1330 (2nd Cir. 1993) (holding that trustee did not waive right to jury trial by filing

bankruptcy petition and noting that a creditor who files proof of claim loses right to jury trial

with respect to disputes that are part of claims-allowance process or affect the hierarchical

reordering of the creditors' claims); *In re Rickel & Assoc.*, 320 B.R. 513, 518 (S.D.N.Y. 2005)

(holding that creditor who filed proof of claim was entitled to jury trial on breach of fiduciary

action where resolution of breach of fiduciary claim would not affect the allowance,

disallowance or priority of the creditor's proof of claim).   *See also Langenkamp v. Culp*, 498

U.S. 42, 44-45 (1990).

Here, it is undisputed that Southern has filed hundreds of proofs of claim against the

Debtors' estates.   Moreover, all of the causes of action unquestionably impact the claims

allowance process because they form the basis of the Debtors' objections to Southern's proofs of

claim.   The claim priority scheme is also affected because Plaintiffs seek to equitably

subordinate Southern's claims.   Therefore, even if certain causes of action may be deemed to be

legal or seek relief at law, Southern still has no right to a jury trial because it submitted to this

Court's equitable jurisdiction by filing proofs of claim.

In *Granfinanciera,* the Supreme Court set out a two-part test for determining whether a

claim is legal or equitable for purposes of the Seventh Amendment:

> First, we compare the statutory action to 18th-century actions
> brought in the courts of England prior to the merger of the courts
> of law and equity.   Second, we examine the remedy sought and
> determine whether it is legal or equitable in nature.

*Granfinanciera*, 492 U.S. at 42 (citing *Tull v. United States*, 481 U.S. 412, 417-18 (1987)).   The

Supreme Court also noted that "[t]he second stage of this analysis is more important than the

first." *Id.* If these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, the next step is to determine whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a fact finder. *Id.* The Supreme Court explained that Congress may assign resolution of a legal claim to a non-Article III body that does not use a jury as a fact finder only if the claim is based on a public, rather than private, right. *Id.* at 51.

A claim concerns a matter of public right when it arises "as part of a process of allowance and disallowance of claims." *Id.* at 58 (quoting *Katchen v. Landy*, 382 U.S. 323, 336 (1966)). Under certain circumstances, legal causes of action tried in the bankruptcy court lose their Seventh Amendment entitlement because they are subsumed within a public rights legislative scheme for restructuring the debtor-creditor relationship. *Ne. Graphic Supply, Inc. v. Net 2 Press, Inc. (In re Ne. Graphic Supply, Inc.)*, Case No. 03-20069, 2003 Bankr. LEXIS 1585, at *10, 2003 WL 22848944, at *3 (Bankr. D. Me. Dec. 2, 2003) (citing *Granfinanciera*, 492 U.S. at 55 n.10 (recognizing that Congress "may decline to provide jury trials" in cases "involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to a[] . . . specialized court of equity")).

Applying this test to the Amended Complaint reveals that each of the seven claims asserted therein are either equitable in nature or relate to a public right. Thus, Southern is not entitled to a jury trial.

1.    *Count I – Fraudulent Conveyances, Fraudulent Transfers and/or Illegal Dividends*

Count I of the Amended Complaint asserts fraudulent transfer claims against Southern.[9]

---

[9] Count I also includes a claim pursuant to 8 Del. C. § 170 to recover illegal dividends paid to Southern as Mirant's sole shareholder. Illegal dividend actions did not exist at the time the Seventh Amendment was ratified. *Stuhley v.*

In comparing a fraudulent transfer claim to 18th-century actions, the Supreme Court has stated that "fraudulent conveyance and preference actions . . . were deemed separate, plenary suits to which the Seventh Amendment applied." *Granfinanciera*, 492 U.S. at 50. The Supreme Court went on, however, to state that by filing a claim against a bankruptcy estate, the creditor triggers the process of allowance and disallowance of claims, thereby subjecting itself to the bankruptcy court's equitable power. *Id.* at 58-59, and n. 14. If the creditor, in turn, is met with a fraudulent conveyance action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Langenkamp*, 498 U.S. at 44 (citing *Granfinanciera*, 492 U.S. at 58-59).[10] "Thus, even though the Seventh Amendment would otherwise have entitled the creditor to a jury trial on the trustee's claim, when the same claim arises as part of the process by which the bankruptcy res is divided, it is triable in equity." *In re Jensen*, 946 F.2d 369, 373 (5th

---

*Dunoco Dev. Corp. (In re Dunoco Dev. Corp.)*, 56 B.R. 137, 140 (Bankr. C.D. Cal. 1985). Although the Seventh Amendment applies to statutory actions, a jury trial is only available if the particular claim is analogous to a pre-merger action at common law. *Curtis v. Loether*, 415 U.S. 189, 195 (1974). It appears that the only court to discuss this issue deemed an illegal dividend claim to be analogous to a pre-merger action for fraudulent conveyance for which no jury trial right was available given the equitable nature of the claim and the remedy. *In re Dunoco*, 56 B.R. at 141. Although Southern cites *Pereira v. Farace*, No. 03-5053, 2005 U.S. App. LEXIS 13040 at *17, 20-26 (2d Cir. June 30, 2005), in support of a right to a jury trial for unlawful dividends, that case relates to a breach of fiduciary duty claim for approving the payment of illegal dividends – a claim which is fundamentally different than the illegal dividend claim asserted by Plaintiffs against Southern herein, which effectively constitutes an element of the fraudulent conveyance claim. In *Pereira*, the trustee brought a breach of fiduciary action against officers and directors of the debtor and sought damages for the defendants' unauthorized receipt and use of funds belonging to the debtor. 2005 U.S. App. Lexis 13040, at *9. The defendants requested a jury trial on the basis that trustee sought a legal remedy. *Id.* at *13. Although the trustee's complaint requested compensatory damages, the district court characterized the damages sought as restitution, which is equitable in nature. *Id.* at *21. The Second Circuit reversed the district court's decision on the grounds that the defendants never possessed the funds in question. *Id.* at *22. As a result, pursuant to the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), the remedy could not be considered equitable. *Id.* Here, there is no question that Southern possessed the transfers and advances that Plaintiffs seek to recover.

[10] Surprisingly, Southern does not even mention *Langenkamp* in the Motion, despite the fact that the case is directly on point, choosing instead to rely on the Supreme Court's earlier decision in *Granfinanciera*. However, unlike here, the creditor in *Granfinanciera* had *not* submitted a proof of claim, 492 U.S. at 58, which formed the critical basis of the Court's conclusion that the creditor retained its right to a jury trial on the trustee's preference claim. *Id.* at 58 (explaining that its prior decisions in *Schoenthal v. Irving Trust Co.*, 287 U.S. 92 (1932), and *Katchen v. Landy*, 382 U.S. 323 (1966), hold that "a creditor's right to a jury trial on a bankruptcy trustee's preference claim *depends upon whether the creditor has submitted a claim against the estate*" and, because the creditors in *Granfinanciera* had not filed claims against the estate, they could not be divested of their right to trial by jury) (emphasis added).

DAL:577049.1

Cir. 1991).

In *Germain*, the Second Circuit explained that under section 502(d) of the Bankruptcy Code a court must disallow "any claim of any entity from which property is recoverable" because of a preference or fraudulent conveyance.[11]  *Germain*, 988 F.2d at 1327 (citing 11 U.S.C. § 502(d)).  Stated differently, before a creditor's claim may be allowed, the bankruptcy court must resolve any fraudulent conveyance issues that the trustee might raise.  *Id.*

The result of this intertwined process is that the creditor's claim and the ensuing avoidance action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction.  *Langenkamp*, 498 U.S. at 44; *see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (stating that restructuring of debtor-creditor relations in bankruptcy "may well be a 'public right'").  As such, there would be no Seventh Amendment right to a jury trial.

The *Katchen*, *Granfinanciera*, and *Langenkamp* line of cases also stands for the proposition that by filing a proof of claim, a creditor forsakes its right to adjudicate before a jury any issue that bears directly on the allowance of that claim, because the legal issue has been converted to an issue of equity.  *Id.* at 1329.  If an equitable reordering cannot be accomplished without resolution of what would otherwise be a legal dispute, then that dispute becomes an essential element of the broader equitable controversy.  *Id.*[12]

---

[11] Southern cites *Germain* for the proposition that "[a] creditor that files a proof of claim retains a right to a jury trial for disputes 'only incidentally related to the bankruptcy process.'"  Motion ¶ 21.  The case, however, is distinguishable on its facts.  In *Germain*, the trustee sought to recover for tortious interference, coercion and duress, breach of contract, unfair and deceptive business practices and misrepresentation.  *Germain*, 988 F.2d at 1326.  Unlike a fraudulent conveyance claim that directly involves the claims-allowance process, the claims asserted in *Germain* had nothing to do with the essence of the bankruptcy regulatory scheme of allowing or reordering claims.  *Id.* at 1327.

[12] Southern cites *In re Crown Vantage, Inc.*, No. C 02-03836, 2002 U.S. Dist. LEXIS 26109, at *12 (N.D. Cal. Dec. 16, 2002), for the proposition that it retains the right to a jury trial notwithstanding its multiple proofs of claim, because the causes of action asserted in the Amended Complaint allegedly have only a "negligible impact on the

This is exactly the situation that the Court faces in this case. Southern has filed numerous proofs of claim in response to which Plaintiffs have asserted fraudulent transfer claims against Southern, and all of the causes of action asserted in the Amended Complaint are connected with the same transaction that forms the basis of Southern's proofs of claim. Southern has invoked the bankruptcy court's equitable jurisdiction to establish a claim against the Debtors' estate and, in doing so, has therefore also subjected itself to the procedures of equity.

### 2.    Counts II and VI – Recharacterization and Equitable Subordination

By definition, equitable subordination under section 510(c) of the Bankruptcy Code or a recharacterization of debt to equity, involve the restructuring of the debtor-creditor relationship and thus directly invokes the bankruptcy court's equity jurisdiction.[13] *Tenn. Valley Steel Corp. v. B.T. Commercial Corp.*, 186 B.R. 919, 923 (Bankr. E.D. Tenn. 1995).

Further, under both Counts II and VI, Plaintiffs seek equitable relief in the form of declaratory judgments and/or restitutionary damages. Generally, an action for money damages was "the traditional form of relief offered in the courts of law." *Curtis v. Loether*, 415 U.S. at

---

bankruptcy process of allowance and disallowance of claims." *Crown Vantage*, which is not controlling precedent for this Court, concerned a plaintiff's right to a jury trial for its claims of fraudulent conveyance, conspiracy, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, negligent misrepresentation, unjust enrichment, conversion, common law fraud, aiding and abetting fraud, fraudulent deceit, and tortious breach of the covenant of good faith and fair dealing. 2002 U.S. Dist. LEXIS 26109, at *6. Although the court reiterated the Supreme Court's test in *Granfinanciera*, it forewent any analysis of the plaintiff's claims and simply proclaimed that "it is beyond dispute that the first two inquires [under *Granfinanciera*] favor a jury trial. *Crown Vantage*, 2002 U.S. Dist. LEXIS 26109, at *7-9. The court then conclusorily stated that the plaintiff's numerous claims against the defendant, which appeared to seek at the very least $100 million, would have only a "negligible impact" on the claims-allowance process, *id.* at *9, without providing any relevant information or analysis. Furthermore, it does not appear as though any other court has required any kind of "threshold" impact on the claims-allowance process before reaching the conclusion that a public right is affected. Finally, the court made the artificial distinction that the plaintiff was not disputing the validity of the defendant's claims but instead, made "the analytically distinct argument that the notes' issuance was fraudulently induced." *Id.* at *9-10. Plaintiffs posit that this is, in actuality, a distinction without a difference, as a claim that the issuance of the notes was fraudulently induced is tantamount to a dispute on the merits of the claim, directly implicating the claims allowance process.

[13] The power of bankruptcy courts to recharacterize a loan from debt to equity comes from the general equitable powers contained in section 105(a), which states that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *Bunch v. J.M. Cap. Fin., Ltd. (In re Hoffinger Indus., Inc.)*, No. 201BK20514, 2005 WL 1634542 at *14 (Bankr. E.D. Ark. July 12, 2005).

DAL:577049.1

196.   The Supreme Court has not, however, held that "any reward of monetary relief must *necessarily* be 'legal' relief." *Id.* (emphasis added).   Damages are characterized as equitable where they are restitutionary, such as in "action[s] for disgorgement of improper profits." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) (citing *Tull*, 481 U.S. at 424); *see also Great-West Life & Annuity Ins. Co.*, 534 U.S. at 213 (holding that restitution "is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case").   Similarly, in this case, the restitution sought from Southern for receiving the illegal dividend is equitable.

Given that the subordination claims lie within this Court's equity jurisdiction, and the fact that Plaintiffs' causes of action seek declaratory judgments and restitution to restore a pre-transfer status quo, such claims are appropriately classified as equitable actions to which the Seventh Amendment right to jury trial does not apply.  *Tenn. Valley*, 186 B.R. at 924.

### 3.   Count III – Alter Ego

Various courts have taken the view that the historic origins of the corporate disregard doctrine is equitable.  *See Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703, 713 (1974) ("[T]he corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy . . . . In such cases, courts of equity, piercing all fictions and disguises, will deal with the substance of the action and not blindly adhere to the corporate form."); *FMC Fin. Corp. v. Murphree*, 632 F.2d 413, 422 (5th Cir. 1980) ("Because the doctrine is essentially equitable in character, the conditions under which a corporate entity may be disregarded vary . . . ."); *United States v. Golden Acres, Inc.*, 684 F. Supp. 96, 103 (D. Del. 1988) ("Piercing the corporate veil is an action that sounds in equity").   Further, the only relief that Plaintiffs seek with respect to the alter ego claim is declaratory.   The equitable nature of the

Plaintiffs' alter ego claim, therefore, precludes the right to a jury trial.

Regardless, the alter ego claim is inextricably intertwined with the bankruptcy case to the point of triggering – if not being central to – the claims-allowance process. In the *Senior Living* case, Judge Felsenthal focused on the substance of the plaintiff's alter ego claim and determined that it was actually a counterclaim to the creditor's proof of claim, recognizing that the plaintiff had no interest in a mere declaration finding a *de facto* partnership. *Senior Living*, 294 B.R. at 701. Instead, the plaintiff desired to "catapult a partnership declaration into a judgment requiring [defendant] to pay the [plaintiff's] debts." *Id.* at 701-702. To successfully obtain a positive recovery from the defendant, the plaintiff's litigation strategy would require the court to disallow or offset the defendant's claim, leaving the defendant obligated to pay the remaining claims against the estate. *Id.* at 702. The bankruptcy court held that since the defendant's claim would be resolved in the bankruptcy case, the plaintiff's *de facto* partnership alter ego counterclaim should be resolved in the same forum. *Id.*

Here, as in *Senior Living*, the claims allowance process as affected by the counterclaim constitutes a core matter which is central to, and should be resolved as part of, the administration of the bankruptcy case. *Id*; *see also id.* at 703 ("the jury trial must yield to the bankruptcy process, for the reasons concerning the claims allowance process"). Thus, there is no right to a trial by jury on the alter ego claim.

### 4.    Count IV – Inducing/Aiding and Abetting Breach of Fiduciary Duty

"Claims for the breach of fiduciary duty have always been within the exclusive jurisdiction of the courts of equity." *In re Jensen*, 946 F.2d at 371 (citing *Local No. 391*, 494 U.S. 558). Aiding and abetting is most accurately characterized as a means for imposing vicarious liability on one person based on an underlying substantive wrong committed by

another person. *See Pinter v. Dahl*, 486 U.S. 622, 648 n. 24 (1988) (stating in the context of securities laws that aiding and abetting is "a method by which courts created secondary liability in persons other than" the one who directly violated a statute).

If the underlying action is equitable in nature, a claim of aiding and abetting that underlying cause of action must also be equitable. *Damage Recovery Sys., Inc. v. Tucker*, No. Civ. 02-1647-SLR, 2005 WL 388597, at *2 (D. Del. Feb. 2, 2005). In this case, the fact that the underlying breach of fiduciary duty claim asserted against the Directors is equitable in nature makes Plaintiffs' claim that Southern aided and abetted such breach of fiduciary duty equitable as well.

In addition to declaratory relief, the Plaintiffs are seeking restitution. Although this request is phrased in terms of monetary relief, courts including the Fifth Circuit have recognized that "monetary relief need not always be legal relief." *In re Rickel & Assoc.*, 320 B.R. at 516; *see also In re Jensen*, 946 F.2d at 372 ("The reality is that there may be situations in which an award of monetary relief is equitable."). Here, the prayer for relief in Count IV explicitly requests a judgment against Southern for the full amount of the transfers and the 1999 advance that Mirant paid to Southern. It is clear that Plaintiffs are simply seeking restitution, which is an equitable remedy. *See Great-West Life & Annuity*, 534 U.S. at 214 ("for restitution to lie in equity, the action must generally seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."). Therefore, given the equitable nature of the Plaintiffs' claim and the remedy sought, no jury trial right exists with respect to Count IV.

5. *Count V – Objections to Defendant's Claims and Submission to Jurisdiction*

Southern filed claims against the bankruptcy estate, thereby bringing itself within the

equitable jurisdiction of the bankruptcy court.  The Plaintiffs' ability to object to such claims is a fundamental aspect of the claims allowance process.

Even if Southern somehow has a right to a jury trial on some of Plaintiffs' claims (which Plaintiffs deny), Southern lost that right by filing proofs of claim against the Debtors' estates.  In determining whether a creditor is entitled to a jury trial on a cause of action brought by the debtor, some courts focus only on whether the creditor filed a proof of claim.  For example, in *SNA Nut Co. v. Haagen-Dazs Co.*, 302 F.3d 725, 730 (7th Cir. 2002), the Seventh Circuit held that the defendant lost its right to a jury trial on the debtor's adversary complaint for breach of contract by filing a proof of claim.  In so holding, the *SNA Nut* court explained that:

> To determine whether a party has submitted itself to the equitable jurisdiction of the bankruptcy court, the relevant inquiry is whether the party has submitted a claim against the bankruptcy estate, thereby subjecting itself to the bankruptcy court's equitable power to allow or disallow claims.  Once a party has triggered this process of allowance and disallowance of claims, that party has subjected itself to the bankruptcy court's equitable jurisdiction and thus can no longer demand a right to trial by jury.

*Id.* at 730 (citing *Granfinanciera*, 492 U.S. at 59 n.14).

Southern itself even relies on a case wherein the defendant conceded that if it had filed a proof of claim, it would have foregone its right to a jury trial on the debtor's adversary complaint for breach of contract.  *See In re Ne. Graphic Supply, Inc.*, 2003 Bankr. LEXIS 1585, at *4.  Courts in this district are in accord.  *See, e.g., In re Nu Van Tech.*, 2003 Bankr. LEXIS 1331, at *8 (recommending reference be withdrawn because defendant entitled to a jury trial, in part, because he had never filed a claim against the estate); *Denton Co. Elec. Coop., Inc. v. Eldorado Ranch, Ltd. (In re Denton Co. Elec. Coop., Inc.)*, Case No. 02-40665-DML-11, 2003 WL 22846354 at *2-3 (Bankr. N.D. Tex. April 8, 2003) (approving of the result in *In re Hooker Invs.*, 122 B.R. 659 (S.D.N.Y. 1991), and recommending that reference not be withdrawn

Page 16

because creditor lost right to trial by jury by filing a counterclaim).[14] Southern has also participated extensively in these chapter 11 cases and has attended substantially every hearing.

Moreover, as previously stated, all of the causes of action alleged in the Amended Complaint are inextricably intertwined with and affect the claims allowance process because they are the subject of the Debtors' objections to Southern's proofs of claim. *See* Amended Complaint at ¶¶ 108-113. All of the causes of action are also inextricably intertwined with the Plaintiffs' cause of action for equitable subordination and, thus, affect the priority of creditors' claims. *Id.* at ¶¶114-119. As a result, Southern lost any purported right to a jury trial on these causes of action by filing proofs of claim. *See Germain, supra; In re Rickel, supra.*

## C. Judicial Economy Would Not Be Fostered by Withdrawal

Southern makes no effort to address judicial economy, other than to say, in an *ipse dixit* fashion, that if the reference is withdrawn, then the case can be consolidated with the D&O Action, transferred to the Georgia federal district court, and somehow have discovery coordinated with the three other pending actions (if not outrightly consolidated therewith). This one statement by Southern in support of "judicial economy" is premised on so many assumptions that, to say the argument rests on a house of cards, is an understatement.[15]

In reality, as the Court in which the Debtors' chapter 11 cases have been pending for over two (2) years, this Court is the most familiar with the issues raised in this adversary proceeding,

---

[14] The fact that the creditor in *Denton* brought a counterclaim to the debtor's complaint rather than filed a proof of claim, as Southern did in the instant case, is a distinction without a difference because courts construe a creditor's counterclaim to an adversary complaint as a proof of claim. *See Roberds, Inc v. Palliser Furniture,* 291 B.R. 102, 106-107 (S.D. Ohio 2003) (citing cases throughout the federal circuits which have construed counterclaims filed in an adversary proceeding as claims against the bankruptcy estate which divest a defendant in an adversary proceeding of the right to a jury trial).

[15] The assumptions in Southern's statement include (i) the reference over the D&O Action is withdrawn, (ii) the reference over this action is withdrawn, (iii) this action is consolidated with the D&O Action, (iv) venue is transferred to Georgia, (v) there is, in fact, not insignificant discovery overlap with the other three actions pending in Georgia and (vi) the Georgia court consolidates all of the actions for all purposes and/or for discovery purposes. As

is best able to efficiently value the Debtors at the operative time, and to otherwise shepherd this case to a swift conclusion.

To that end, the Court is thus intimately familiar with the Debtors' operations and their history – more so than any other court. *See Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1101 (2d Cir. 1993) ("hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues"); *Big Rivers Elec. Corp.*, 182 B.R. at 756 ("a judge's knowledge of the facts is a factor that may be considered in deciding a motion to withdraw the reference"); *United States v. Oncology Assocs., P.C.*, No. Civ H-95-2241, 2000 WL 1074304, at *3 (D. Md. July 24, 2000) (district court took case because "this Court is much more familiar with the parties, with their claims and with the proposed settlements than is [the] Bankruptcy Judge").

No less important is the crucial fact that, at the end of the day, the ultimate question for the Court will be whether the Debtors were solvent at the times the transfers in the complaint occurred. Aside from the fact that valuation is an exercise that bankruptcy courts engage in on a regular basis, this Court has recently conducted an approximately 27-day trial on the Debtors' value. Although the focus of that trial was valuation as of today, the methodology, metrics, concepts and practices at issue in that proceeding are highly relevant to the 1999/2000 valuation that will need to occur in this adversary proceeding. Even Southern recognizes that this testimony will be "key" and "extensive", Motion ¶ 7, and no court is in a better position to engage in the valuation exercise than this Court. *See In re Serv. Marine Indus.*, No. Civ. A. 00-579, 2000 WL 777912, at *3 (E.D. La. May 30, 2000) ("given the number of issues raised in the adversary proceeding, their relation to core bankruptcy proceedings, and the fact that the trustee

---

stated earlier, the Committee has sought to dismiss the D&O Action.

has already initiated the adversary proceeding in bankruptcy court, it would seem quite inefficient to litigate these claims in district court"); *Orion Pictures*, 4 F.3d at 1101-1102 (even if a case is non-core, a district court "might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court"); *see generally Brown v. Shepherd (In re Lorax Corp.)*, 307 B.R. 560, 568 (Bankr. N.D. Tex. 2004) (recognizing procedural responsibilities of bankruptcy court).

Due to the Court's familiarity with the Debtors, the Committee, their counsel, Southern's counsel and the general issues to be presented, litigating before this Court will also be efficient and expeditious, whereas litigating in Georgia (or anywhere else) would, at a minimum, necessitate retaining local counsel and familiarizing new counsel and a new judge with the specifics of the case. On the other hand, any alleged burden and expense to witnesses and parties located in Georgia can certainly be minimized. Southern has obviously already retained counsel (at least two firms) in Texas. To the extent that witnesses in Georgia are needed for trial or discovery, the parties have the option of conducting videotaped or telephonic depositions to be played at trial. Furthermore, fairness, consistency and governing law dictate that claims asserted by or against the Debtors should be centralized and resolved by this Court to assure uniform, consistent results. Finally, as discussed earlier, Southern does not enjoy the right to a jury trial because, *inter alia*, it has submitted to this Court's jurisdiction by invoking the claims allowance process.

### D.    Southern is Engaging in Forum Shopping

The motion to change venue Southern has filed in the District Court leaves no doubt that Southern is forum shopping. As one of the largest energy companies in the country, and one of

the largest institutions in the state of Georgia (and certainly in Atlanta), Southern clearly wants the opportunity to "home town" the Plaintiffs. It is embarrassing for Southern to even try to suggest otherwise. The Motion should be denied on this basis alone. 1 COLLIER ON BANKRUPTCY ¶ 3.04[1][b] ("Believing that a motion to withdraw smacks of forum shopping, the district courts have generally not been receptive to a motion to withdraw the reference"); *Oncology Assocs.,* 2000 WL 1074304, at *6 (finding forum shopping where, "[d]issatisfied with actions taken by the Bankruptcy Court which appear to be completely justified, [movant] is attempting by this motion to have this Court address all matters that would arise during the administration of the bankruptcy estate").

**E.      Other Factors Do Not Give Rise to Cause**

As stated above, the Amended Complaint and the claims asserted therein constitute a core proceeding. This factor alone militates against withdrawing the reference. *See In re Serv. Marine Indus.*, 2000 WL 777912, at *3 (finding "permissive withdrawal unwarranted because the adversary proceeding involves core proceedings and no other factor supports withdrawal"); *Sibarium*, 107 B.R. at 114 ("In weighing the judicial economy to be served by withdrawal, a district court must consider whether the claims at issue involve 'non-core' bankruptcy matters."); *Seaway Painting, Inc. v. Cornell & Co., Inc.*, No. 98-158, 1998 WL 800343, at *2 (E.D. Pa. Nov. 16, 1998) ("When an adversary proceeding is determined to be a 'core' proceeding, courts are less likely to withdraw the reference.").

Further, and also as stated earlier, the fact that a litigation trustee will ultimately be substituted as plaintiff for the Committee and the Debtors is a red herring. Right now, and until such time as a chapter 11 plan becomes effective, the Debtors and the Committee are prosecuting this case, and each have a fiduciary duty to maximize its value for their constituents. Extensive discovery and pretrial motion practice will undoubtedly take place during this time period.

Following the effective date of a plan, this case and all other pending avoidance actions will be transferred seamlessly to a litigation trust. At the end of the day, if those prosecuting this action are successful, approximately $2 billion will be returned to the estates for distribution to creditors, and Southern could perhaps be held responsible for paying all of the Debtors' debts. Clearly, uniformity in the Debtors' bankruptcy process and the administration of their estates are directly implicated, and favor leaving the reference intact.

For the same reasons, as well as the other reasons stated herein, leaving the reference intact will also expedite the bankruptcy process and result in the economical use of estate resources.

## III.
### NEITHER A CHANGE OF VENUE NOR CONSOLIDATION WITH THE DISMISSED D&O ACTION ARE APPROPRIATE

Although loathe to pre-argue the issue, Plaintiffs are compelled to at least summarily address the change of venue and consolidation issues raised by Southern. Plaintiffs reserve all of their respective rights to present any and all arguments in opposition to any motion to change venue and/or consolidate, and nothing herein should be construed as, nor is it intended to be, a waiver of any argument, claim or allegation.

### A.    Venue is Appropriate in This Court[16]

There is a strong presumption that venue of a civil adversary proceeding should be maintained in the debtor's home bankruptcy court. *Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.)*, 133 B.R. 585, 587 (Bankr. D. Del. 1991); 1 COLLIER ON BANKRUPTCY ¶4.04[1]; *see also Foxmeyer Health Corp. v. McKesson Corp. (In re Foxmeyer Corp.)*, 217 B.R. 511, 515 (Bankr. N.D. Tex. 1997) ("[P]resumptively, civil adversary

---

[16] Many of the reasons that venue should not be transferred also support leaving the reference intact.

proceedings should be venued with the underlying bankruptcy case") (Felsenthal, J.) (citations

omitted).    To that end, as noted by the Supreme Court, "Congress intended to grant

comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and

expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*,

514 U.S. 300, 308 (1995).

Pursuant to 28 U.S.C. § 1412, a Court *may*, but is not required to, transfer a case "in the

interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The Court, however,

should exercise its power to transfer venue of adversary proceedings cautiously. *A.R.E. Mfg.*

*Co., Inc. v. D&M Nameplate, Inc. (In re A.R.E. Mfg. Co., Inc.)*, 124 B.R. 912, 914 (Bankr. M.D.

Fla. 1991) (citing, *inter alia, Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.,*

*Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 569 F.2d 1239 (5th Cir. 1979), *cert. denied*,

444 U.S. 1045 (1980)).    As the moving party, Southern has the burden of overcoming the

presumption of maintaining venue in the home bankruptcy court, *Continental*, 133 B.R. at 587,

and proving by a preponderance of the evidence that a transfer of venue is warranted. *Foxmeyer*,

217 B.R. at 515.    Southern cannot meet this burden, and the non-bankruptcy run of the mill

venue cases it relies on are off-point.[17]

Southern's arguments for transferring venue focus mainly on its assumption that Georgia

law applies to the claims asserted in the Amended Complaint.   However, Southern completely

---

[17] Contrary to Southern's claims at page 11 of the Motion, in the context of a bankruptcy adversary proceeding, the convenience of witnesses is *not* the most important factor to be considered, nor could it be in light of the strong presumption of venue in the home bankruptcy court.  Rather, all of the cases cited by Southern for this erroneous proposition are "typical" non-bankruptcy cases in which a change of venue was sought, rather than bankruptcy adversary proceedings. *See Travelers Indem. Co. of Am. v. Nat'l Union Fire Ins. Co. of Phila.*, Case No. 3:02-CV-0585, 2002 WL 1575409 (N.D. Tex. July 16, 2002) (insurance coverage); *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720 (S.D. Tex. 2002) (products liability); *McGinnis v. Ely Lilly & Co.*, 181 F. Supp. 2d 684 (S.D. Tex. 2001) (products liability); *Feliciano v. Texaco, Inc.*, 144 F. Supp. 2d 741 (S.D. Tex. 2001) (personal injury); *Minka Lighting v. Trans Globe Imps.*, No. 02-CV-2538-G, 2003 U.S. Dist. LEXIS 8862, 2003 WL 21251684 (N.D. Tex. May 23, 2003) (patent).

ignores the allegations in the Amended Complaint that specifically invoke New York fraudulent conveyance law.[18]    Amended Complaint ¶ 83.    Southern also ignores the likelihood that Delaware, bankruptcy or common law would also apply to most of the remaining causes of action.    Both Mirant and Southern are Delaware corporations, which means that Delaware law could apply, and at least a portion of the complaint specifically seeks relief under Delaware law (Count I (in the alternative)).    A portion of the complaint seeks relief under bankruptcy and common law (Counts II (recharacterization) and VI (equitable subordination)).    The objection to Southern's claims implicates bankruptcy law and contract interpretation (Count V).    The breach of fiduciary duty claim could implicate Delaware law and/or common law (Count IV).    Finally, the alter ego claim (Count III) could implicate either Delaware or New York law.

It is therefore rife speculation, at best, that Georgia law will be applicable at all. Southern obviously recognizes that this is not the appropriate time, or context in which, to make a decision regarding which jurisdiction's laws apply to the various causes of action in the Amended Complaint because Southern offers nothing more than a passing conclusory statement that Georgia law is applicable.    Southern's argument is simply a red herring because application of a state's fraudulent conveyance (and other) law is something that this Court does regularly. These cases are typically tried in bankruptcy courts as core proceedings.    The fatal flaw in Southern's argument is its failure to recognize that the Bankruptcy Court without doubt possesses the expertise to apply whatever law is determined to be appropriate.

Southern's assertion that this action should be transferred to Georgia because there are three other actions pending in that forum in which Southern and/or the Directors are defendants – the Mirant ERISA Litigation, the Securities Litigation and the Southern ERISA Litigation (all as

---

[18] Over $500 million in creditors' claims are governed by New York law.  Any transfers by the Defendant in an

defined in the Motion) – is yet another red herring. Aside from the fact that neither Mirant, the Committee nor any of the Committee's constituents are plaintiffs in these pre-existing actions, and aside from the fact that the Committee has dismissed the D&O Action, the issues raised in the three pending Georgia actions are factually and legally distinct from the issues raised herein.[19] Copies of the complaints for each of the three pending Georgia actions appear at Tabs B through D of the Appendix. Although there may, perhaps, be some overlapping discovery at some point (a fact yet to be shown), that should not present any burden to Southern: if the documents produced in any of the pending actions are producible in this case, then the same documents may simply be copied and produced herein. The reverse is also true. Similarly, Southern has all available defenses to production in all of the cases.

For all of these reasons, as well as the reasons discussed with respect to judicial economy above (section II(C)), the Bankruptcy Court is the most familiar with the Debtors and their underlying bankruptcy cases, thus making it most efficient to keep this case in the Bankruptcy Court. Consequently, Southern cannot overcome the presumption that this case should remain in the Debtors' home bankruptcy court.

---

effort to defeat those creditors' claims should likewise by governed by New York law.

[19] The Amended Complaint is not related to nor does it involve the same issues as the securities class action and the ERISA actions pending in Georgia District Court. The Amended Complaint asserts claims against Southern based on fraudulent transfers, mischaracterizations of equity as debt, alter ego liability, and breach of fiduciary duty. The securities class action asserts different claims under different laws against different individual and corporate defendants. Specifically, the plaintiff class alleges violations of the Securities Act, sections 11 and 15, and the Securities Exchange Act, sections 10(b) and 20(a), based on alleged conspiracies to manipulate the California energy market, misstatements in Mirant's Initial Public Offering prospectus and later filings, overstatements of financial results, and inflation of stock prices. For the ERISA actions, the claims fall under the ERISA statute and are brought, again, against different defendants. The fact that the securities class action attorney recently filed a subpoena against Troutman Sanders LLP, a non-debtor party, does not alter this result. Indeed, the subpoena is irrelevant to the present analysis, as the filing of a subpoena does not create a relationship between the Amended Complaint and the Georgia District Court actions that never existed in the first place. Nor is there any risk of duplicative discovery because the securities class action and the ERISA actions have been stayed by the Bankruptcy Court. In fact, the Debtors recently filed a motion for an order requiring the securities class action plaintiffs to withdraw the subpoena because it violated the stay issued by the Bankruptcy Court, as well as the automatic stay under section 362(a)(3) of the Bankruptcy Code.

**B.    There is no Basis for Consolidation of this Case with the Dismissed D&O Action**

At the time the Motion was filed, the D&O Action was pending.  The Committee has since sought dismissal of the D&O Action pursuant to its absolute authority to do so under Rule 41(a) of the Federal Rules of Civil Procedure.  Because there is nothing with which to be consolidated, efficiencies of consolidation do not support the Motion.

IV.<br>CONCLUSION

Southern's Motion does not provide any basis for the Bankruptcy Court to recommend withdrawal of the reference.  The venue issue is a premature red herring, and the consolidation issue is now moot.  To the extent the Bankruptcy Court decides that the venue issue is somehow ripe, any ruling on that matter should be deferred pending the District Court's ruling on the withdrawal issue.

**WHEREFORE**, the Plaintiffs respectfully request (i) entry of a report and recommendation by the Bankruptcy Court that the District Court deny the Motion, (ii) entry of an order by the District Court denying the Motion, and (iii) the granting of such other and further relief as may be just and proper.

Respectfully submitted this 9th day of September, 2005.

Jason S. Brookner
Texas State Bar No. 24033684
**ANDREWS KURTH LLP**
1717 Main Street, Suite 3700
Dallas, Texas  75201
Telephone:     (214) 659-4400
Facsimile:     (214) 659-4401
Email:jasonbrookner@andrewskurth.com

John A. Lee
Texas State Bar No. 12125400
Robin Russell
Texas State Bar No. 17424001
**ANDREWS KURTH LLP**
600 Travis, Suite 4200
Houston, Texas  75201
Telephone: (713) 220-4200
Facsimile:  (713) 220-4285
Email:   johnlee@akllp.com
            robinrussell@akllp.com

**CO-COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS
OF MIRANT CORPORATION, ET AL.**

-and-

_Ian T. Peck_

Robin Phelan
Texas State Bar No. 15903000
Ian T. Peck
Texas State Bar No. 24013306
**HAYNES AND BOONE, LLP**
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone: (214) 651-5000
Facsimile:  (214) 651-5940
Email:  phelanr@haynesboone.com
        Ian.Peck@haynesboone.com

    -and-

    Thomas E Lauria
    Texas State Bar No. 11998025
    Charles C. Kline
    Frank L. Eaton
**WHITE & CASE LLP**
Wachovia Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email:  tlauria@whitecase.com
        ckline@whitecase.com
        featon@whitecase.com

**COUNSEL FOR THE DEBTORS**

DAL:577049.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 9th day of September, 2005, he caused a true and correct copy of the foregoing document to be served on the parties appearing below via first class U. S. mail, postage prepaid.

Jason S. Brookner

Thomas E Lauria
Charles C. Kline
Frank L. Eaton
**White & Case LLP**
Wachovia Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131
Facsimile: (305) 358-5744
Email: tlauria@whitecase.com
         ckline@whitecase.com
         featon@whitecase.com
**Attorneys the Debtors**

Deborah Williamson
Tom Rice
**Cox Smith Matthews Incorporated**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Email:  ddwillia@coxsmith.com
         trice@coxsmith.com
**Attorneys for the MAGI Committee**

George McElreath
**Office of the United States Trustee**
1100 Commerce Street, Room 9C60
Dallas, Texas 75242
Email:  george.f.mcelreath@usdoj.gov

Richard M. Roberson
**Gardere Wynne Sewell**
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Email: rroberson@gardere.com
**Attorneys for the Examiner**

Robin Phelan
**Haynes and Boone, LLP**
901 Main Street, Suite 3100
Dallas, Texas 75202
Facsimile: (214) 651-5940
Email: phelanr@haynesboone.com
         Ian.Peck@haynesboone.com
**Attorneys  for the Debtors**

Bruce Zirinsky
Gregory Petrick
**Cadwalader Wickersham & Taft**
One World Financial Center
New York, New York 10281
Email:  bruce.zirinsky@cwt.com
         gregory.petrick@cwt.com
**Attorneys for the MAGI Committee**

Eric Taube
**Hohmann, Taube & Summers**
100 Congress Avenue, Suite 1800
Austin, Texas 78701
Email:  erict@hts-law.com
**Attorneys for the Equity Committee**

Edward Weisfelner
**Brown, Rudnick, Berlack, Israels**
120 West 45th Street
New York, New York 10036
Email: eweisfelner@brbilaw.com
(and lscharf@brbilaw.com, and
hsiegel@brbilaw.com)
**Attorneys for the Equity Committee**

Gregory M. Gordon
Sydney B. McDole
Craig F. Simon
**Jones Day**
272 North Harwood Street
Dallas, Texas 75201
Email: ggordon@jonesday.com
        sbmcdole@jonesday.com
        csimon@jonesday.com
**Attorneys for The Southern Company**

Richard A. Chesley
**Jones Day**
77 West Wacker
Chicago, Illinois 60601
Email: rchesley@jonesday.com
**Attorneys for The Southern Company**

G. Lee Garrett, Jr.
Janine Cone Metcalf
**Jones Day**
1420 Peachtree Street, NE
Atlanta, Georgia 30309
Email: ggarrett@jonesday.com
        jmetcalf@jonesday.com
**Attorneys for The Southern Company**

DAL:577049.1