IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MIRANT CORPORATION, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:05-CV-479-A |
| | § | |
| THE SOUTHERN COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision are the
motions of defendant, The Southern Company, ("Southern") for
withdrawal of the reference of an adversary proceeding ("motion
for withdrawal") and to transfer the adversary proceeding to the
United States District Court for the Northern District of Georgia
("motion to transfer").[1]  After having considered the motions,
responses thereto, replies by the movants, other parts of the
record pertinent to such motions, and applicable authorities, the
court has concluded that the motion for withdrawal of the
reference should be granted and tentatively has concluded that

---

[1]Pending motions that are related to the motions for withdrawal
and to transfer are a motion of defendant to consolidate this action
with an action raising basically the same issues against directors
and officers of defendant and a motion of plaintiffs to strike the
motions to consolidate and to transfer.  The motion to consolidate is
now moot because of dismissal of the action against the directors and
officers.  The request that the motion to consolidate be stricken
has, therefore, become moot as well.  Plaintiffs have fully responded
to the motion to transfer, causing the motion to transfer feature of
the motion to strike also to become moot.  Therefore, the court is
not considering further the motion to consolidate or the motion to
strike.

the motion to transfer should be granted, at least in part, but is withholding ruling on that motion at this time.

I.

## The Motion for Withdrawal

A.   The Reference.

On July 26, 2005, Southern moved for withdrawal of the reference to the bankruptcy court of an adversary proceeding filed by Mirant Corporation ("Mirant")[2] and the Official Committee of Unsecured Creditors of Mirant Corporation, et al. ("Committee"), as plaintiffs, against Southern in the jointly administered case under chapter 11 of the Bankruptcy Code pending before the bankruptcy court as Case No. 03-46590.  The reference to the bankruptcy court was automatic pursuant to this court's Miscellaneous Rule No. 33 directing that, with the exception of personal injury tort and wrongful death claims, "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . which may be filed [in this district] be and they are hereby referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law."  The adversary proceeding in question includes claims that are related to a case under title 11, see In re Wood, 825 F.2d 90, 93 (5th Cir. 1987), and claims arising in a case under title 11, id. at 97.

---

[2]Mirant is one of the debtors in Case No. 03-46590.

B.   The Causes of Action Alleged by Plaintiffs Against Southern in Adversary No. 05-04099.

The complaint by which the adversary proceeding in question was initiated was filed on June 16, 2005, and docketed as No. 05-04099 (DML) in the bankruptcy court.   An amended complaint ("complaint") was filed July 6, 2005, adding as plaintiffs eighty-two entities that are described in the pleading as affiliates of Mirant, at least some of which are debtors in the jointly administered chapter 11 case.

The complaint has six counts.   They are based, directly or indirectly, on (1) multiple transactions between Southern and Mirant, or that Southern caused Mirant to enter into, while Mirant was a subsidiary of Southern, (2) a public offering of Mirant's common stock while Mirant was a subsidiary of Southern, or (3) the spin-off of Mirant to Southern's shareholders.   The events of which plaintiffs complain occurred from the mid-to-late 1990s through early 2001.

By Count I plaintiffs seek a declaration that certain of the transactions of which plaintiffs complain were either conveyances or transfers, or both, in fraud of the rights of "Creditors"[3] under 11 U.S.C. § 544(b) and applicable state law, or, in the alternative, constituted dividends paid by Mirant to its shareholder parent, Southern, that were unlawful under Delaware

---

[3]Apparently "Creditors" is used in the complaint to refer to all unsecured creditors who have filed and scheduled claims in Case No. 03-46590.   See Compl. at 18, ¶ 79.   In this memorandum opinion and order, "Creditors" is used to convey the same meaning given to it in the complaint.

law.  Plaintiffs request in the Count I claim unspecified amounts of compensatory and punitive damages, together with pre- and post-judgment interest, costs, and attorneys' fees.

By Count II, plaintiffs seek (1) a judicial recharacterization as equity held by Southern in Mirant certain advances Southern made to Mirant between 1993 and 1996 of funds necessary for Mirant to make investments in energy facilities, (2) an order declaring that the return of more than one billion dollars by Mirant to Southern on or after July 26, 1999, in repayment of  those advances constituted a conveyance or transfer in fraud of the rights of Creditors under 11 U.S.C. § 544(b) and applicable state law or, alternatively, an unlawful dividend under state law, and (3) entry of judgment against Southern and in favor of plaintiffs in the amount of $1,034,800,000.00, together with punitive damages in an unspecified amount, pre- and post-judgment interest, costs, and attorneys' fees.

By Count III, plaintiffs seek an order declaring that Mirant, Mirant Americas Generation, L.L.C., and their respective subsidiaries (collectively "Mirant Entities") were the alter egos of Southern and that, therefore, Southern is liable to Creditors to the full extent of any liability of the Mirant Entities to Creditors.

By Count IV, plaintiffs allege that: (1) Mirant Entities were insolvent, or in the zone of insolvency, when certain of the transactions of which plaintiffs complain occurred, with the consequence that Mirant owed a fiduciary duty of loyalty and good

4

faith to Creditors; (2) Southern caused Mirant Entities to engage in those transactions when Southern knew, or should have known, that the transactions would lead to the bankruptcy of Mirant Entities and to the unsatisfied claims of Creditors; (3) those transactions were a breach of the duties of loyalty and good faith owed by Mirant Entities to Creditors because the consideration Mirant Entities received was unfair; (4) Southern knew, or should have known, that those transactions would cause Mirant Entities to breach their duties of loyalty and good faith to Creditors; and (5) those transactions individually and collectively were the direct and proximate cause of the bankruptcy of Mirant Entities and of loss to the substantially consolidated bankruptcy estates of Mirant Entities in excess of two billion dollars.  Plaintiffs seek in Count IV (1) an order declaring that Southern induced Mirant Entities to breach their duties of loyalty and good faith to Creditors, and (2) entry of a judgment in favor of plaintiffs against Southern for the total of the amounts involved in the transactions mentioned in Count IV, together with pre- and post-judgment interest, costs, and attorneys' fees.

By Count V, plaintiffs object to (1) any claim made by Southern in Case No. 03-46590 against the debtors and their estates "as property that is recoverable against Southern, for reasons set forth [in the complaint]," Compl. at 26, ¶ 111, (2) claims referred to as the "Southern Separation Agreement Claims," totaling more than $48,000,000.00, made by Southern in Case No.

03-46590 against the debtors and their estates, because the
agreements by which the obligations to Southern arose were
fraudulent and illegal transfers and obligations and are
voidable, (3) a claim referred to as the "Guaranties Claim,"
totaling more than $22,000,000.00, made by Southern in Case No.
03-46590 against debtor Mirant Americas Energy Marketing, L.P.,
and its estate, because the agreements by which the obligations
to Southern arose were fraudulent and illegal transfers and
obligations and are voidable, and (4) all amounts claimed by
Southern in the Southern Separation Agreement Claims and the
Guaranties Claim because no amounts are due and owing Southern as
to those claims.  Plaintiffs pray for entry of an order
sustaining all their objections to the Southern Separation
Agreement Claims and the Guaranties Claim.

By Count VI, plaintiffs seek entry of an order equitably
subordinating certain of Southern's claims in bankruptcy to the
claims of all other Creditors.  Plaintiffs allege that to avoid
unfairness Southern should not be permitted to retain cash or
other proceeds it received from certain transactions or to
receive any distribution on any claims against the debtors in
bankruptcy before payment in full is made to all of the non-
defendant Creditors.  According to plaintiffs, unfairness exists
because: (1) Southern caused the initial capitalization of Mirant
Entities and their substantially consolidated subsidiaries to be
inadequate; (2) Southern exercised "improper adverse domination
and control," Compl. at 27, ¶ 116, over the spinoff of Mirant,

6

giving Mirant Entities no voice in certain transactions about which plaintiffs complain, thereby resulting in the over-leveraging and under-capitalization of Mirant Entities; (3) Southern engaged in inequitable misconduct that harmed Creditors and unfairly benefitted Southern; and (4) Southern inequitably (given Southern's knowledge of the financial condition of Mirant Entities) upstreamed over two billion dollars in value to itself through various transactions.

C.    Southern's Jury Demand.

Southern filed its answer to the complaint on August 17, 2005.  The answer contained Southern's demand for a trial by jury of all issues so triable in this matter, as contemplated by Rule 38(b) of the Federal Rules of Civil Procedure.

D.    Confirmation of the Plan of Reorganization in Case No. 03-46590.

By order entered December 9, 2005, in the jointly administered Case No. 03-46590, the bankruptcy court confirmed the plan of reorganization for Mirant and its affiliated debtors.[4]

The confirmation order provides that the debtors in the chapter 11 case are to transfer and assign all of their rights in the adversary proceeding to a newly formed entity, and that the transferee entity will have the sole power and control over the manner in which the proceeding is prosecuted, settled, or

---

[4]The confirmed plan bears the title "Amended and Restated Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and its Affiliated Debtors."

7

otherwise liquidated.[5]  Confirmation Order at 36, ¶ 97.  Nothing
in the Plan or confirmation order impairs, or otherwise affects,
the rights, claims, or defenses of Southern in the adversary
proceeding, including the pending motions to withdraw the
reference and transfer venue.  Id. at 44, ¶ 117.  Any cash
recovery realized in the adversary proceeding are to be shared
fifty percent by holders of certain allowed claims in bankruptcy
and fifty percent by holders of certain equity interests in
Mirant.  Id. at 15, ¶ 40; Plan at 31-32, § 10.13.

E.   The Grounds of the Motion for Withdrawal.

     Southern candidly explains in its motion that it "is not
seeking to have this matter litigated and tried before this
Court," Mot. for Withdrawal at 2, but that the withdrawal of the
reference is sought so that this court might, on Southern's
motion, transfer this action to the district court in the
Northern District of Georgia pursuant to the authority of 28
U.S.C. §§ 1404 and 1412.  Apparently Southern chose not to ask
the bankruptcy court to transfer the action because of a concern

_____

     [5]On January 6, 2006, MC Asset Recovery, LLC, ("MC") filed a
motion seeking substitution as plaintiff in this proceeding,
alleging that it is the transferee entity, having been formed on
January 3, 2006 (the effective date of the confirmed plan of
reorganization), and that on January 3 the claims asserted in
this proceeding vested in MC and it became the successor-in-
interest to the plaintiffs.  The court has ordered plaintiffs and
defendant to file expedited responses to the motion to
substitute.

8

it has that the bankruptcy court does not have the authority to transfer the case to a district court in another district.[6]

The motion for withdrawal was filed pursuant to the authority of 28 U.S.C. § 157(d).[7]  Southern says that the circumstances of this case cause withdrawal of the reference to be appropriate under the principles expressed in <u>Holland America Insurance Co. v. Succession of Roy</u>, 777 F.2d 992, 998-99 (5th Cir. 1985).

Southern contends that some of the claims alleged in the complaint are non-core.  It makes specific reference to the claim asserted in Count I that certain transactions constituted unlawful dividends under Delaware law, the alter-ego claim in Count III, and the claim for recovery of monetary damages for aiding and abetting breach of certain fiduciary duties, as alleged in Count IV.  According to Southern, it has a right to a jury trial with respect to the fraudulent transfer and conveyance claims, the fiduciary duty claims, and the illegal dividend claims.  Southern does not consent to the bankruptcy court

---

[6]Southern notes that it could request the bankruptcy court to transfer this case to the bankruptcy court in the Northern District of Georgia, and then request the district court in the Northern District of Georgia to withdraw the reference.  Mot. for Withdrawal at 12 n.8.  According to Southern, a reason for not pursuing that course is that this court has familiarity with the underlying chapter 11 cases and the issues raised by the motion for withdrawal.

[7]Title 28 U.S.C. § 157(d) reads in pertinent part as follows:

**(d)**  The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

entering a final order or judgment in any non-core proceeding or conducting a jury trial.

Judicial economy will be fostered by withdrawal of the reference, according to Southern, because once the reference has been withdrawn the case can be transferred to the district court in the Northern District of Georgia so that the court in Georgia might be able to determine the most efficient way to proceed in this case and litigation now pending there. Southern says that there is a substantial overlap between the Georgia litigation and this action. Southern denies that it is seeking the withdrawal to avoid the bankruptcy court, contending that its aim is to have this action tried in the district court in the Northern District of Georgia. According to Southern, Georgia is "the forum whose law applies to many of the claims, where the underlying transactions occurred, where the vast majority of witnesses and evidentiary proof reside, and where related litigation has been pending." Mot. for Withdrawal at 19-20.

As to the remaining Holland America factors, Southern notes that this litigation will be post-confirmation litigation pursued by a trust to be established upon debtors' exit from bankruptcy, not by debtors; that the joint plan of reorganization proposed by debtors provides that this action, perhaps along with others against Southern, will be transferred to a trust created by the plan of reorganization; and that, consequently, this action will have no impact on the administration of the chapter 11 cases.

In its reply to plaintiffs' opposition to the motion for withdrawal, Southern, in reliance on <u>In re Clay</u>, 35 F.3d 190, 198 (5th Cir. 1994), further suggests that withdrawal of the reference might well be required in this case because of Southern's entitlement to a jury trial on one or more of the claims of the complaint.

F.    <u>The Report and Recommendation of the Bankruptcy Judge</u>.

Consistent with the procedure contemplated by Local Bankruptcy Rule 5011.1,[8] on August 31, 2005, the presiding bankruptcy court judge, the Honorable Dennis Michael Lynn, published his report and recommendation regarding the motion for withdrawal, recommending that it be denied.  Judge Lynn's recommendation was predicated on the following conclusions:

(1)  After discussing actions Southern has taken in connection with the chapter 11 cases, Judge Lynn concluded that "the Motion is clearly not consistent with [Southern's] repeated invocation of the bankruptcy court's equitable powers, let alone [its] conduct respecting the standing issue," and that "[w]ithdrawal of the reference, given these facts, might encourage manipulation of bankruptcy jurisdictional options in other cases."  Report & Recommendation at 6.

---

[8]Local Bankruptcy Rule 5011.1 provides that a motion for withdrawal of the reference is to be directed to the district court, but filed with the clerk of the bankruptcy court.  The rule directs that the bankruptcy judge, after having engaged in certain procedural steps, and after having considered and determined enumerated factors, prepare a written report to the district judge that is to contain the bankruptcy judge's findings on the factors he is to consider pursuant to the rule and a recommendation as to whether the withdrawal should be granted.

(2)  Judge Lynn concluded that (a) all claims made by plaintiffs in the complaint are core proceedings, with the possible exception of the Count IV claims, and (b), even if the Count IV claims are non-core, they are sufficiently intertwined with the other claims in the complaint that the interests of justice would be served if the claims were to be tried together.

(3)  While concluding that the making of a jury demand by a party entitled to a jury trial automatically requires withdrawal of the reference, Judge Lynn concluded that (a), generally speaking, any right Southern might have had to a jury trial was lost upon the filing of its claims against debtors in the chapter 11 cases and (b), in any event, Southern would not be entitled to a jury trial on the alter-ego claims in Count III because they are equitable claims as to which no right of jury trial would exist.  Judge Lynn recognized that Southern might be entitled to a jury as to the Count IV claims of aiding and abetting breach of duty, but concluded that those claims are clearly intertwined with the other counts of the complaint.  In addition, Judge Lynn concluded that those claims simply present an alternative theory of recovery that depends on the same facts as the fraudulent transfer, equitable subordination, and claim objection counts, with the consequence that a separate trial by jury as to Count IV would not be appropriate.

(4)  As to the judicial economy factor, Judge Lynn expressed doubt that this case and the pending Georgia litigation

have very much in common.  He concluded that the need for judicial economy would not favor withdrawal of the reference.

(5)  Although he said that Southern's conduct has the appearance of forum shopping, Judge Lynn accepted as true Southern's assertion that its motion is not motivated by forum shopping.

(6)  Judge Lynn expressed the concern that withdrawal of the reference and transfer of this case to Georgia could lead to inconsistent findings, such as findings regarding solvency, but went on to conclude that a grant of the motion would not adversely affect the uniform administration of bankruptcy cases generally.

(7)  He concluded that (a) the economical-use-of-the-debtors'-and-creditors'-resources factor does not favor grant or denial of the motion and (b) the expediting-the-bankruptcy-process factor is not relevant to a decision on the motion.

(8)  Judge Lynn summed up with his conclusion that Southern has not satisfied its burden to justify grant of the motion to withdraw the reference because, he believed, the Holland America factors either support retention of the case in the bankruptcy court or are not relevant to a decision on the motion.

G.  Activities of Southern in the Chapter 11 Cases Have Not
    Been Inconsistent with its Request for Withdrawal of
    the Reference.

     Judge Lynn devoted significant attention in his report and
recommendation to his concern that activities of Southern in the
chapter 11 cases are inconsistent with Southern's motion for
withdrawal of the reference.   Report & Recommendation at 2-6.[9]
The court disagrees with Judge Lynn's conclusion that Southern's
bankruptcy court activity is inconsistent with the motion for
withdrawal.   The actions Southern took in the jointly
administered chapter 11 case were legitimately taken by it to
protect its interests; and, Southern's motion for withdrawal is a
proper assertion of its constitutional rights to have legal
claims tried to a jury and to have an Article III court
adjudicate the non-core claims.

     Southern's motion was timely filed--it was filed twenty days
after the filing of the amended complaint and forty days after
the filing of the original complaint.   None of the actions taken
by Southern before it filed its motion for withdrawal provides
reason for denial of the motion.[10]   If Judge Lynn's views on this

_____

     [9]The transcript of the August 24, 2005, hearing on the motion
reveals the depth of the bankruptcy judge's displeasure with
Southern's filing of the motion for withdrawal.   See Tr. of Aug. 24,
2005, hearing at 94-109.

     [10]In In re Bryant, the Fifth Circuit said that "this court has
repeatedly held that the filing of a proof of claim does not in
itself constitute a waiver of an objection to summary jurisdiction."
626 F.2d 492, 494 & n.1 (5th Cir. 1980).   Thus, the principles of
Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458
                                                    (continued...)

14

subject were to be accepted, the result would be a determination
that Southern waived its constitutional right to have the non-
core claims adjudicated by an Article III judge as well as its
constitutional right to have the legal claims asserted against it
tried to a jury.  As discussed below, the court is not authorized
to treat a party's constitutional rights so lightly.  Infra at
28-29.

H.   Considering the *Holland America* Factors.

     In Holland America, the Fifth Circuit provided the district
courts the following guidance when deciding whether to order
withdrawal of a reference:

> [T]he district court must keep one eye cocked toward
> the decision of the Supreme Court in *Northern Pipeline*
> *Constr. v. Marathon Oil Pipe Line Co.*, 458 U.S. 50, 102
> S. Ct. 2858, 73 L.Ed.2d 598 (1982), which is the progenitor of
> the new bankruptcy court jurisdictional scheme.  Whatever the
> precise teaching of *Marathon* it holds, at a minimum, that Article
> I bankruptcy courts may not have original jurisdiction over
> adversary proceedings that do not intimately involve the debtor-
> creditor relationship and rest solely in issues of state law.
> 458 U.S. at 84, 102 S. Ct. at 2878, 73 L.Ed. 2d at 623. . . .
> The Bankruptcy Amendments Act has attempted a flexible response
> to *Marathon*, permitting bankruptcy courts to hear "core"
> proceedings by blanket reference from the district courts, while
> authorizing them to function much like magistrates as adjuncts to
> the district court on matters that are merely "related to" a
> bankruptcy.  *Marathon* provides the outer boundary of original
> referred jurisdiction of bankruptcy courts, but considerations of
> judicial economy also bear on the decision to withdraw the
> reference or refer to bankruptcy court.  The district court
> should consider the goals of promoting uniformity in bankruptcy
> administration, reducing forum shopping and confusion, fostering
> the economical use of the debtors' and creditors' resources, and
> expediting the bankruptcy process.

---

[10](...continued)
U.S. 50 (1982), withstand the filing of proofs of claim by a litigant
who insists that non-core issues be adjudicated by an Article III
court.

Finally, we note that there is a jury demand in the district court file.  Its continued existence may influence the district court's decision, for while we do not reach the issue, there is some doubt whether bankruptcy courts can conduct jury trials in light of *Marathon* and the Bankruptcy Amendments Act.  The district court should apply these factors in articulating whether to withdraw the reference on this litigation.

777 F.2d at 998-99 (footnotes omitted).

    1.   <u>Whether the Claims Asserted in the Adversary Proceeding are Core or Non-Core</u>.

<u>Holland America</u> suggests that the starting point in evaluating the merit of a motion for withdrawal is a determination of whether the proceeding is core or non-core.[11] The core versus non-core classification determines whether the bankruptcy court has adjudicatory jurisdiction (in core

---

[11]Section 157(b)(3) of title 28 says that the bankruptcy judge shall determine whether a proceeding is core or non-core.  While the court is uncertain whether the conclusions expressed by the bankruptcy judge in the report he submitted pursuant to the report and recommendation procedure described in Local Bankruptcy Rule 5011.1, <u>supra</u> at 11 n.8, are determinations of the kind contemplated by § 157(b)(3), even if they are, they nevertheless would be conclusions of law to be reviewed <u>de novo</u>.  <u>See</u> William L. Norton, Jr., <u>Norton Bankruptcy Law and Practice 2d</u>, § 4:79 at 4-219 - 4-220 (1997).  <u>See also</u> <u>In re Delaware & Hudson Ry. Co.</u>, 122 B.R. 887, 890-92 (D. Del. 1991).  The court notes that Local Bankruptcy Rule 5011.1 says that a factor the bankruptcy judge is to consider in deciding whether to recommend withdrawal is whether the proceeding is core or non-core or both.

proceedings), <u>see</u> 28 U.S.C. § 157(b)(1),[12] or has a restricted judicial role (in non-core proceedings), <u>see</u> § 157(c)(1).[13]

Congress has not defined "core" or "non-core," but in § 157(b)(2) of title 28 Congress provided a non-exclusive listing of core proceedings, which includes the following:

> (A) matters concerning the administration of the estate;

> (B) allowance or disallowance of claims against the estate . . .;

> . . . .

> (H) proceedings to determine, avoid, or recover fraudulent conveyances;

> . . . .

> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

---

[12]Section 157(b)(1) of title 28 reads as follows:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

[13]Section 157(c)(1) of title 28 reads as follows:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing <u>de novo</u> those matters to which any party has timely and specifically objected.

The Fifth Circuit cautioned in its <u>Wood</u> opinion that the statutory listing, in particular § 157(b)(2)(O), should not be read so broadly that the dictates of <u>Northern Pipeline Construction Co. v. Marathon Pipe Line </u>Co., 458 U.S. 50 (1982), would be violated.  825 F.3d at 95.  The two dictates of <u>Marathon</u> that must be considered here are that "bankruptcy judges may exercise full judicial power over only those controversies that implicate the peculiar rights and powers of bankruptcy" and that "controversies that do not depend on the bankruptcy laws for their existence--suits that could proceed in another court even in the absence of bankruptcy--are not core proceedings."  <u>In re Wood</u>, 825 F.2d at 96.

The word "proceedings" as used in § 157 refers to specific claims, causes of action, or grounds for relief, and not to the entire action.  <u>See</u> <u>Ralls v. Docktor Pet Ctrs., Inc.</u>, 177 B.R. 420, 425 (D. Mass. 1995).  <u>See also</u> <u>Halper v. Halper</u>, 164 F.3d 830, 837 (3d Cir. 1999); <u>In re Systems Eng'g & Energy Mgmt. Assocs., Inc.</u>, 252 B.R. 635, 642-44 (Bankr. E.D. Va. 2000).  Therefore, an independent determination is to be made as to each of the causes of action asserted by plaintiffs in the complaint.  In this case, Southern acknowledges that the fraudulent transfer and conveyance claims in Count I, the fraudulent and illegal transfer claims in Count IV, the objections in Count V to Southern's claims against debtors in the chapter 11 case, and the equitable subordination claim in Count VI are core.  Tr. of Aug. 24, 2005, hearing at 124-25.  Apparently Southern acknowledges

18

that the recharacterization claims in Count II are core.[14]
Southern contends that the unlawful dividend claim in Count I,
the alter-ego claim in Count III, and the claim for recovery of
monetary damages for aiding and abetting breach of certain
fiduciary duties, alleged in Count IV, are non-core.  See Tr. of
Aug. 24, 2005, hearing at 124-25.  Mot. for Withdrawal at 14-15,
¶ 17.

A holding of the Fifth Circuit in Wood provides further
guidance for determining whether a proceeding is core:

> We hold, therefore, that a proceeding is core
> under section 157 if it invokes a substantive right
> provided by title 11 or if it is a proceeding that, by
> its nature, could arise only in the context of a
> bankruptcy case.

825 F.2d at 97.  See also In re U.S. Brass Corp., 301 F.3d 296,
304 (5th Cir. 2002).  The Court added in Wood that a proceeding
that does not meet the test quoted above is non-core.  825 F.2d
at 97.  In the course of explaining why the proceeding in Wood
was non-core, the Fifth Circuit made the following instructive
distinctions:

> The plaintiff's suit is not based on any right created
> by the federal bankruptcy law.  It is based on state
> created rights.  Moreover, this suit is not a
> proceeding that could arise only in the context of a
> bankruptcy.  It is simply a state contract action that,
> had there been no bankruptcy, could have proceeded in
> state court. . . .
>
> The substance of this action does not support a
> finding of core status.  The essential issue in the

---

[14]Southern has not taken issue with plaintiffs' assertion in
their opposition to the motion for withdrawal that Southern does not
dispute that Count II is a core proceeding.  Pls.' Mem. of Law in
Opp'n to Mot. at 3 n.4.

proceeding is whether the defendants are liable to the
plaintiff under state law.  The suit does not raise as
primary issues such matters as dischargeability,
allowance of the claim, or other bankruptcy matters.
Conceivably, a final judgment in this proceeding in the
plaintiff's favor may lead to proceedings to allow the
claim or to discharge the debt.  At this juncture,
however, these concerns are speculative and
insubstantial issues in the proceeding.  The
plaintiff's suit is not a core proceeding.

Id. at 97-98 (footnotes omitted).  A court evaluating whether a

proceeding has core status "must look to both the form and

substance of the proceeding."  Id. at 97.

The Fifth Circuit has given effect to the § 157(b) directive

that "[a] determination that a proceeding is not a core

proceeding shall not be made solely on the basis that its

resolution may be affected by State Law," stating in In re

Southmark Corp. that the fact that the claims in issue arose

under state law does not prevent them from invoking core

jurisdiction.  163 F.3d 925, 930 (5th Cir. 1999).  In Southmark

Corp., the Fifth Circuit recognized that a factor to be

considered in determining whether a claim is core is whether the

claim invokes the bankruptcy court's court jurisdiction to

adjudicate and determine the extent of a litigant's claims

against the bankruptcy estate.  Id. at 932.  However, the

prospect that successful prosecution of the action would enrich

the debtor's estate does not make claims asserted in the action

core.  Id. at 931.

After applying the principles announced by the Fifth

Circuit, the court has concluded that the unlawful dividend claim

in Count I, the alter-ego claim in Count III, and the claim for

20

recovery of monetary damages for aiding and abetting breach of certain fiduciary duties, as alleged in Count IV, all are non-core. If the bankruptcy court were to exercise adjudicatory jurisdiction as to any of those claims over the objection of Southern, the dictates of <u>Marathon</u> would be violated. None of the controversies related to those claims implicate the peculiar rights and powers of bankruptcy, nor do any of those claims depend on the bankruptcy laws for their existence--they are claims that could proceed in another court even in the absence of bankruptcy. None of those claims involves a substantive right provided by title 11, nor is any of a nature that it could arise only in the context of a bankruptcy case or based on any right created by the federal bankruptcy law. Rather, each of them is based on a state-created right.

In reaching the conclusion that the alter-ego claim in Count III is non-core, the court recognizes the general proposition that such a claim is a right of action belonging to the debtor and, therefore, is property of the bankruptcy estate. <u>See</u> <u>In re S.I. Acquisition, Inc.</u>, 817 F.2d 1142, 1153 (5th Cir. 1987). The court also has considered the dicta in the opinion in <u>In re Senior Living Properties, LLC</u> suggesting that an alter-ego claim may be so inseparable from the bankruptcy case that it will be deemed to have arisen in the case. 294 B.R. 698, 702 (N.D. Tex. 2003). No facts are present here that would support a conclusion that the alter-ego claim asserted in Count III has become inseparable from the chapter 11 cases of the Mirant debtors.

21

The court agrees with the conclusions expressed in <u>In re BN1 Telecommunications, Inc.</u> that an alter-ego claim "is a purely state-law cause of action that does not fall within the core of federal bankruptcy power" and "is not a proceeding merely affected by state law; it is dictated by that law."  246 B.R. 845, 849 (6th Cir. BAP 2000).  In <u>Systems Engineering</u>, the court correctly noted that an alter-ego claim "obviously sounds solely under state law and in no manner can be construed as falling under any of the enumerated actions set forth in 28 U.S.C. § 157(b)(2)[]."  252 B.R. at 650.[15]  Of interest, the <u>BN1</u> and <u>Systems Engineering</u> decisions both were influenced by principles announced by the Fifth Circuit in <u>Wood</u>.  See <u>In re BN1 Telecomm., Inc.</u>, 246 B.R. at 849; <u>In re Systems Eng'g & Energy Mgmt. Assocs., Inc.</u>, 252 B.R. at 642 n.2, 651.

<u>Systems Engineering</u> also bears on the issues of whether the unlawful dividend claim in Count I and the claim for damages for aiding and abetting breach of certain fiduciary duties, alleged

---

[15]In <u>BN1</u> the debtor was contending in an adversary proceeding that two of the defendants were the alter ego of the third with the consequence that the third was liable to the debtor for the obligations of the other two.  <u>In re BN1 Telecomm., Inc.</u>, 246 B.R. 845, 846-47 (6th Cir. BAP 2000).  The alter-ego claim in <u>Systems Engineering</u> was that non-debtor corporations disregarded corporate formalities, conducted their business affairs inseparably from the debtor's, commingled their financial affairs with the debtor, and generally held themselves out to the debtor's creditors as the debtor's corporate alter ego.  <u>In re Systems Eng'g & Energy Mgmt. Assocs., Inc.</u>, 252 B.R. 635, 649 (Bankr. E.D. Va. 2000).  In the instant action, plaintiffs' alter-ego claim is that the Mirant Entities were the alter egos of Southern, thus causing Southern to be liable to Creditors for the debts of the Mirant Entities to Creditors.  However, the factual distinctions between the cases are unimportant as to the issue under discussion.

in Count IV, are core or non-core.  As to a breach of fiduciary duty claim, the Systems Engineering court explained:

> [T]he claim of a corporation or its creditors for breach of fiduciary duty against the corporation's officers and directors is solely a creature of state law, and it can in no manner implicate the public rights found in *Marathon* to permit this Court's assertion of core jurisdiction.

252 B.R. at 644.  Similarly, the Systems Engineering court held that a claim based on alleged unlawful distributions of the debtor's funds for the benefit of a director was a non-core proceeding.  252 B.R. at 644-47.  The same results were reached in In re Delaware & Hudson Railway Co., which involved an action by the bankruptcy trustee against the debtor's shareholders/directors for declaration of unlawful dividends pursuant to state law, waste pursuant to state law, and breach of fiduciary duty (the "D & O lawsuit").  122 B.R. 887, 893 (D. Del. 1991).  The reasoning employed by the Delaware & Hudson court in reaching its conclusion that the claims asserted in the D & O lawsuit were non-core applies as well here:

> The state law claims at issue in the D & O lawsuit existed prior to and independent of the filing of the instant bankruptcy, and the Court concludes that under these circumstances the D & O lawsuit is a non-core proceeding, and thus subject to permissive withdrawal under 28 U.S.C. § 157(d).  If admittedly state law claims such as those underlying the D & O lawsuit were classified as "core" proceedings based upon the connection, as argued by the Trustee, that the proceeds of the action will become part of the sum to be distributed to creditors of the bankrupt debtor, the teachings of the U.S. Supreme Court in *Marathon* would be effectively eradicated.  *Every* proceeding could be characterized as a core proceeding, because every recovery has some effect on the size of the bankrupt's estate.  This is obviously contrary to what Congress

           intended when it statutorily distinguished between core
           and non-core proceedings.

122 B.R. 887, 894-95 (D. Del. 1991) (footnote omitted).  The

Fifth Circuit's Wood opinion was also cited and quoted with

approval in Delaware & Hudson.  Id. at 890, 895.

     With one qualification, the court accepts the acknowledgment

by Southern that the fraudulent transfer and conveyance claims in

Count I, the recharacterization claims in Count II, the

objections in Count V to Southern's claims against debtors, and

the equitable subordination claim in Count VI are core.  The

qualification is that the court is inclined to think that the

request made in Count II for a declaration that the 1999 Advance

Return was an unlawful dividend under state law is a non-core

claim.

     The court has concluded that the non-core claims in this

action are at least as significant as the core claims, with the

consequence that the court cannot reasonably say that the core

claims predominate over the non-core claims.  Nor are the core

and non-core claims so intertwined as to cause any of them to

assume a different character.  Also, the court notes that even

though the unlawful conveyance claims brought under § 544(b)(1)

are classified as core in 28 U.S.C. § 157(b)(2), they have non-

core characteristics (such as being predicated in whole or in

part on state law) that would raise Marathon concerns if they

24

were to be submitted to the adjudicatory jurisdiction of the bankruptcy court over the objection of Southern.[16]

The court disagrees with Judge Lynn's conclusion that whatever non-core claims there are in Count IV are so intertwined with the other claims in the complaint that the interest of justice would be served if the claims were to be tried together. The principles announced in Marathon would be violated if such an intertwinement theory were to be given effect in this case.

2.   Whether Southern is Entitled to a Jury Trial as to Any of the Claims in the Complaint.

Southern maintains that it is entitled to a jury trial on the fraudulent transfer and conveyance claims, the breach of fiduciary duty claims, and the illegal dividend claims.  It has demanded trial by jury of all issues so triable, and has made known that it does not consent to the bankruptcy court conducting a jury trial.

As general propositions:

> The Seventh Amendment preserves the right to a jury trial "in Suits as common law."  U.S. Const. amend. VII.  This right encompasses all actions in which legal rights are to be determined, as opposed to those in which only equitable rights and remedies are involved.  Of course, application of the Seventh Amendment is not limited to actions at common law. Legal rights, to which the right to a jury trial attaches, may be statutorily created as well. . . .
>
> . . . .

---

[16]In Carlton v. BAWW, Inc., the Fifth Circuit recognized that there are arguments as to the constitutionality of § 157(a)(2).  751 F.2d 781, 788 & n.9 (5th Cir. 1985).

> . . . When claims involving both legal and
> equitable rights are properly joined in a single case,
> the Seventh Amendment requires that all factual issues
> common to these claims be submitted to a jury for
> decision on the legal claims before final court
> determination of the equitable claims.

Allison v. Citgo Petroleum Corp., 151 F.3d 402, 422-23 (5th Cir.
1998) (case citations omitted).  And, as a general rule monetary
relief is legal.  Feltner v. Columbia Pictures Television, Inc.,
523 U.S. 340, 352 (1998).  A monetary remedy is not rendered
equitable simply because it is not fixed or readily calculable
from a fixed formula.  Id. at 353.  The right to a jury trial is
secured if the claims asserted include "at least some legal as
opposed to equitable elements" and monetary relief is sought.  In
re Jensen, 946 F.2d 369, 371 (5th Cir. 1991).  As already noted,
plaintiffs seek significant monetary relief in three counts of
the complaint.  The court concludes that the monetary relief
plaintiffs seek is legal in character.  See id. at 372.

Generally, claims for breach of fiduciary duty are within
the exclusive jurisdiction of courts of equity.  Id. at 371.  See
also In re Rickel & Assocs., Inc., 320 B.R. 513, 516 (S.D.N.Y.
2005).  However, when a legal remedy, such as monetary relief, is
sought for breach of a fiduciary duty, the action assumes legal
attributes.  See In re Rickel, 320 B.R. at 516-17.  Moreover,
joinder of equitable claims with legal claims does not deprive a
party of the right to a jury trial on the legal claims.  In re
Jensen, 946 F.2d at 372-73.  Nor does the classification of a
claim as core deprive a litigant of its constitutional right to a

26

jury trial.  See Germain v. Connecticut Nat'l Bank, 988 F.2d 1323, 1326-27 (2d Cir. 1993); In re Rickel, 320 B.R. at 517.

Historically, "an action for fraud could be brought in either a court of law or a court of equity, depending on the circumstances of the case."  In re Jensen, 946 F.2d at 371.  In the instant case, plaintiffs seek by the fraudulent transfer and conveyance and unlawful dividend claims of Count I legal relief in the form of compensatory and punitive damages in unspecified amounts.  By the unlawful dividend claims made, along with the fraud claims, in Count II, plaintiffs seek actual damages in the amount of $1,034,800,000.00 plus punitive damages.  By the breach of fiduciary duty claims made by plaintiffs in Count IV, plaintiffs seek a monetary judgment against Southern for an amount well in excess of $1,000,000,000.00.

Paraphrasing language used by the Fifth Circuit in Jensen, "[i]t is true that [the instant action] implicates both legal and equitable concerns, but the presence of equitable elements does not deprive [Southern] of [its] right to trial by a jury of [plaintiffs'] legal claims."  Id. at 373.  The court has concluded that Southern is entitled to trial by jury as to the fraudulent transfer and conveyance claims, the breach of fiduciary duty claims, and the illegal dividend claims.

Plaintiffs argue, and Judge Lynn concluded, that Southern forfeited any right it might otherwise have had to trial by jury by virtue of having filed proofs of claim in the title 11 cases. The court disagrees.  To start with, the court will not presume

27

that a litigant has knowingly and willfully surrendered its
constitutional right to a jury trial for the resolution of
disputes that are only incidently related to the bankruptcy
process. See In re Rickel, 320 B.R. at 518.  And, as the Supreme
Court has made clear, any waiver of constitutional rights must be
voluntarily, intelligently, and knowingly made.  See Fuentes v.
Shevin, 407 U.S. 67, 94-95 (1972); Brady v. United States, 397
U.S. 742, 748 (1970).  In keeping with those principles, the
Supreme Court consistently has held that courts must indulge in a
presumption against waiver of the Seventh Amendment right to a
jury trial.  See Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393
(1937) (where the court said that "as the right of jury trial is
fundamental, courts indulge every reasonable presumption against
waiver").  See also Beacon Theatres, Inc. v. Westover, 359 U.S.
500, 510-11 (1959).  There is no suggestion in the record that
Southern has knowingly, voluntarily, and intelligently waived its
right to trial by jury.

     The mere fact that plaintiffs filed proofs of claim in the
title 11 cases did not convert the legal claims into equitable
claims.  See Germain, 988 F.2d at 1327, 1330.  See also In re
Rickel, 320 B.R. at 517-18.  Resolution of the legal claims
raised in this action will not directly affect the liability or
priority of Southern's proofs of claim in the bankruptcy cases,
see id., nor do the legal claims asserted in this action arise as
part of the process of allowance or disallowance of claims in
bankruptcy, see In re Jensen, 946 F.2d at 374.  Rather, they

28

essentially are claims brought by the debtors and Committee to augment the bankruptcy estate.  See id.  The determinations of the legal claims in this action simply will not directly implicate the bankruptcy claim resolution process, see In re Behring & Behring, 445 F.2d 1096, 1098-99 (5th Cir. 1971); In re Rickel, 320 B.R. at 517, nor will the power of the bankruptcy court to readjust the debtor-creditor relations and reorder creditor claims equitably and completely be diminished if the legal claims in this action are tried to a jury, see Germain, 988 F.2d at 1327, 1330, 1332; see also In re Rickel, 320 B.R. at 518.

An example of an issue that arises as part of the process of allowance and disallowance of claims is the issue of preference. See Langenkamp v. Culp, 498 U.S. 42, 44-45 (1990); Katchen v. Landy, 382 U.S. 323, 336 (1966).  The issue of disgorgement of an alleged voidable preference is not presented by any of the legal claims as to which Southern has entitlement to a jury trial.  In In re Bryant, the Fifth Circuit recognized the limited applicability of Katchen.  626 F.2d 492, 494 (5th Cir. 1980).  As was true as to the truth-in-lending causes of action involved in In re Bryant, resolution of the legal claims presented by the complaint here "is not necessary for a determination as to the actual allowance or disallowance of [Southern's] claims," with the consequence that "the holding in Katchen is inapposite."  626 F.2d at 494.  Earlier, in In re Behring & Behring, the Fifth Circuit, after recognizing Katchen, quoted with approval from its 1964 decision in Gill v. Phillips, 337 F.2d 258, 262-63 (5th Cir.

29

1964), that "the admittedly desirable end of expeditious administration of bankruptcy estates should not be allowed effectively to eliminate the protection afforded litigants by the traditional safeguards of a plenary suit, with the right to trial by jury and cross-examination of witnesses." 445 F.2d 1096, 1099 (1971). Katchen and Langenkamp were distinguished in a similar way in Germain. 988 F.2d at 1327. As the Germain court noted, the mere fact that the outcome of a dispute could have the effect of enlarging the estate does not mean that the dispute will have any effect on the allowance of a disputant's claims in bankruptcy. Id. In that respect, disputes such as ones involved in the instant action differ from those involved in Langenkamp and Katchen (avoidance of a preferential transfer), which went directly to the process of allowance and disallowance of claims. Id.

3. Considering the Remaining *Holland America* Factors.

The conclusions the court has reached that the action contains non-core claims and that Southern is entitled to trial by jury as to certain claims standing alone suggest that there should be a withdrawal of the reference. As to the former, the bankruptcy court's lack of adjudicatory jurisdiction over the non-core claims means that if the bankruptcy court were to retain jurisdiction over those claims its judicial power would be limited to its submission to the district court, after hearing, of proposed findings of fact and conclusions of law for a de novo review by the district court. See 28 U.S.C. § 157(c)(1). As to

the latter, in In re Clay the Fifth Circuit held that there must
be a withdrawal of the reference as to claims to which the right
to trial by jury attach.  35 F.3d 190, 195, 197-98 (5th Cir.
1994).

     The remaining Holland America factors either favor
withdrawal or are indifferent.  Judicial economy will not be
sacrificed by the withdrawal.  Rather, adjudicating all of the
claims, both core and non-core, in the district court eliminates
the prospect of an appeal from the bankruptcy judge's
adjudications of core claims, and dispenses with the need for the
district court to conduct a de novo review of proposed findings
and conclusions of the bankruptcy judge after a trial in the
bankruptcy court as to non-core claims.  And, for the same
reasons, withdrawal of the reference will foster the economical
use of the resources of the litigants.  That the bankruptcy judge
held a lengthy valuation hearing has little relevance to a
determination of values as of the remote points in time pertinent
to the adversary proceeding.  To the extent that there might be
an overlap in the judicial activities related to the
adjudications to be made as to the withdrawn claims and the
determinations to be made as to Southern's claims in bankruptcy,
the overlap could be eliminated by a withdrawal of the reference
of Southern's proofs of claim and objections thereto, or by an
order of the district court defining the issues that will not be

before the bankruptcy court in determining Southern's claims in bankruptcy.[17]

As did Judge Lynn, the court accepts as true Southern's assertion that its motion is not motivated by forum shopping. And, the court agrees with Judge Lynn's conclusion that the expediting-the-bankruptcy-process factor is not relevant to the withdrawal decision.  Particularly is this so now that Judge Lynn has confirmed the plan of reorganization.  Nothing about this litigation will interfere with or advance the chapter 11 process, nor would the withdrawal interfere in any respect with the goal of promoting uniformity in bankruptcy administration.  The court does not conclude that any confusion exists as to the issues to be resolved, or that the "confusion" factor weighs on whether withdrawal should be ordered.

The court is not persuaded that the potential that the adversary proceeding might be transferred to the Northern District of Georgia is a factor that should be given significant weight in the decision of whether there should be a withdrawal of

---

[17]The court invited the parties to comment on whether, if the reference is withdrawn as to the adversary proceeding, there also should be a withdrawal of the reference as to the objections of debtors to the proofs of claim filed by Southern.  Both parties have responded that a resolution of the issues raised in the adversary proceeding necessarily will resolve the issues raised by the objections to Southern's proofs of claim, with the consequence that nothing would be accomplished by withdrawing the reference as to the objections.  The court tentatively agrees.  The appearance is that plaintiffs have supplanted their objections to Southern's proofs of claim with Count V of the complaint so that a withdrawal of the reference of the adversary proceeding carries with it a withdrawal of the reference of all objections to Southern's proofs of claim.  The handling of Southern's claims in bankruptcy and debtors' objections thereto could be the subject of a future order.

the reference.  As the court discusses below, while the court
tentatively has concluded that there should be a transfer of
venue as requested by Southern, the court still has that matter
under consideration.

The fact that Southern maintains that the only reason it
filed the motion for withdrawal was to facilitate the transfer of
the action to the Northern District of Georgia and that it is not
seeking to have the matter litigated and tried before this court,
mot. for withdrawal at 2, is a significant factor to be
considered.  However, the other factors to be considered weigh so
heavily in favor of withdrawal of the reference that the court is
not giving overriding effect to the possibility that the court
will choose not to grant Southern's motion to transfer.

I.   The Court is Ordering Withdrawal of the Reference.

In sum, the court concludes that the Holland America factors
weigh in favor of withdrawal of the reference, and that the
reference of the action pending in the bankruptcy court as
Adversary No. 05-04099 should be withdrawn.  For the reasons
given in the foregoing parts of this memorandum opinion and
order, the withdrawal is for cause shown, as contemplated by the
first sentence of 28 U.S.C. § 157(d).

II.

The Motion to Transfer

Southern's motion to transfer this adversary proceeding to
the Northern District of Georgia is made pursuant to 28 U.S.C.
§§ 1404(a) and 1412.  Section 1404(a) provides that "[f]or the

33

convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  There is a question whether § 1412 applies in a case such as this where the action sought to be transferred consists of claims that are related to a case under title 11 and claims arising in a case under title 11.  See NI Fuel Co., Inc. v. Jackson, 257 B.R. 600, 622-23 (N.D. Okla. 2000); In re Foxmeyer Corp., 217 B.R. 511, 514 (Bankr. N.D. Tex. 1997).  The court is of the belief that the Foxmeyer court was correct in its conclusion that "[f]or a proceeding arising in or related to a case under title 11, the general provisions of 28 U.S.C. § 1404(a) apply."  In re Foxmeyer Corp., 217 B.R. at 514.

The court tentatively has concluded that the motion to transfer should be granted, at least as to certain claims asserted in the complaint.  Upon further consideration, the court might well conclude that the motion should be granted as to all claims.

Were it not for the pendency of the jointly administered chapter 11 case in the bankruptcy court in the Northern District of Texas, there would be no justification for the bringing of the

34

claims asserted in the adversary proceeding in a Texas court.[18]
Mirant is a Delaware corporation with its principal place of
business in Atlanta, Georgia.  Southern also is a Delaware
corporation with its principal place of business in Atlanta,
Georgia.  Committee is comprised of creditors from New York, New
Jersey, and North Carolina.  The remaining plaintiffs are
corporations affiliated with Mirant.  Plaintiffs have not called
the court's attention to any significant connection between any
of the plaintiffs and Texas other than the fact that plaintiffs
are participants (as debtors or creditors) in the jointly
administered chapter 11 case.  The only connection between
Southern and Texas disclosed by the record is that Southern is a
debtor in the chapter 11 case.

        Plaintiffs do not contend that any of the operative facts
alleged in the complaint occurred in Texas, that Texas law
applies to any of the claims stated in the complaint, or that
Texas has any connection to any of the facts from which the
dispute arose.  On the other hand, Southern has demonstrated that
the convenience of the parties and witnesses would be served if
this action were to be tried in the Northern District of Georgia,
where the underlying transactions occurred, where the majority of
the witnesses and evidentiary proof are located, and where

---

        [18]The question has been raised as to why the chapter 11 cases
were filed in the Northern District of Texas.  <u>See</u> Tr. of Aug. 24,
2005, hearing at 109-10; Reply in Supp. of Mot. to Transfer at 8.
However, Southern seems to concede that the Northern District of
Texas was a proper venue for the filing of the bankruptcy cases.  <u>See</u>
Tr. of Aug. 24, 2005, hearing at 109.

litigation between some of the same parties already is pending. Because of the factors mentioned above, Georgia has the most substantial interest in resolution of the claims.  The court is satisfied that the interests of justice would be served by a transfer of this case to Georgia.  There is no question but that this action might have been brought in the Northern District of Georgia.

There is authority that there is a presumption in favor of maintaining venue of an adversary proceeding in the forum where the bankruptcy case is pending.  See In re Continental Airlines, 153 B.R. 585, 587 (Bankr. D. Del. 1991); In re Windsor Commc'ns Group, Inc., 53 B.R. 293, 296 (Bankr. E.D. Pa. 1985).  Any such presumption in this case has been significantly weakened, if not entirely destroyed, by the circumstance that this now is post-confirmation litigation.

However, before finally determining whether to grant the motion to transfer in whole or in part, the court plans, at the least, to resolve the issue of the identity of the plaintiff (plaintiffs), see supra at 8 n.5, and the issue of whether the reference of the objections to Southern's proofs of claim should be withdrawn, id. at 32-33 n.17.

III.

Order

Therefore,

The court ORDERS that the reference to the bankruptcy court of adversary proceeding number 05-04099 be, and is hereby, withdrawn, and that such adversary proceeding be carried on the docket of this court under the style and number shown in the caption of this memorandum opinion and order.

The court further ORDERS that Southern's motion to transfer remains under consideration by the court.

SIGNED January __10__, 2006.

                                   ___/s/ John McBryde_____
                                   JOHN McBRYDE
                                   United States District Judge

37